THE STATE EX REL. BLANCHE C. WINTERS, Administratrix of Estate of CHARLES FULLER WINTERS, v. FRANCIS H. TRIMBLE ET AL., Judges of Kansas City Court of Appeals.

Division Two; December 20, 1926.

1. **CERTIORARI: Court of Appeals: Conflict in Decisions.** A court of appeals when acting within the sphere of its jurisdiction is a court of final resort, and its judgments are conclusive in this court when reviewed by certiorari unless its rulings are in conflict with some prior and controlling opinion of this court on the same or similar facts.

2. ————: **Antedating Insurance Policy: Substitution of New Policy.** The insured, being indebted to the company, for a loan note for $970 and a premium note for $125.60, in January, 1917, tendered his policy to the company and requested the substitution therefor of a non-participating policy for the same amount, "said substituted policy to be dated February 26, 1916, at age 37, on which the premium hereafter will be $131.45 per annum; notes to be cancelled and returned." At the time (January, 1917) he was thirty-eight years of age, and the annual premium at that age was $133.95, and the annual premium at the age of thirty-seven years was $131.45. The company issued a new policy for the same amount, surrendered the notes, and took his new note for $1010, dated February 26, 1916, due and payable one year after date, and gave the policy the same date. As a matter of fact the transaction took place in January, 1917, the note being executed on January 22, 1917, and the policy being delivered January 23, 1917. The insured died January 11, 1918. The policy provided that upon default in payment of any premium or other note the policy should be null and void, and the insured did not pay the note for $1010. The effect of the agreement was that the insured, by accepting the antedated policy and executing the antedated note, given for a larger amount than his indebtedness, was obligated to pay a less premium than the usual premium required of a man thirty-eight years of age. The policy also provided that it should not take effect until delivery and the payment of the first premium. **Held,** that the Court of Appeals in deciding that the antedated agreement was supported by a valuable consideration, and that the note, not being paid within the year after its date, the policy lapsed before the insured's death, did not contravene Halsey v. Insurance Co., 258 Mo. 659, nor any other decision of this court, because this court has never made a decision in a case of the same or similar facts.

---

Corpus Juris-Cyc. References: **Certiorari,** 11 C. J., Section 341, p. 193, n. 46 New. **Courts,** 15 C. J., Section 511, p. 1079, n. 42.

*Certiorari.*

WRIT QUASHED.

*Rosenberger, McVey & Freet* for relator.

(1) The policy provides that it shall not take effect until delivery and payment of the first premium, and that the policy and application constitute the entire contract. The policy was delivered, and the first year's premium paid January 23, 1917. The assured died January 11, 1918, within the policy year, and the policy was in force at the time of the death of the assured. Halsey v. Am. Cent. Ins. Co., 258 Mo. 659; State ex rel. v. Allen, 295 Mo. 307; Johnson v. Am. Cent. Ins. Co., 249 S. W. 115; Landrigan v. Mo. State Life Ins. Co., 245 S. W. 382. The denial by the Court of Appeals of the ruling of this court in Halsey v. Insurance Company as to the time of the taking effect of the policy is based upon extrinsic evidence of an alleged antedating agreement. In considering evidence of an antedating agreement outside the contract the opinion is in conflict with the last controlling decisions of this court. Ijams v. Life Assur. Soc., 185 Mo. 471; Banks v. Casualty Co., 223 S. W. 80. (2) The opinion establishes the fact that there was a cash value in the policy sufficient to extend the insurance to a period beyond the date of the death of the insured. (a) So that in any event the policy was in force at the date of the death of the assured, because the premium note for $131.45 was not a lien on the policy and was not deductible from the net value of the extended insurance and the opinion in holding that the words "indebtedness hereon" included "any indebtedness on account of the policy" is contrary to the rules of construction laid down by this court. State ex rel. v. Allen, 295 Mo. 307; Mathews v. Modern Woodmen, 236 Mo. 342. (b) The Court of Appeals has violated the rules of policy construction laid down by this court, in straining the phrase "indebtedness hereon" to make it include an ordinary non-lienable premium note, and deducting that note from the cash value of the extended insurance, and thereby creating a forfeiture, and is in conflict with general principles announced by this court. State ex rel. v. Allen, 295 Mo. 307; Mathews v. Modern Woodmen, 236 Mo 342; Souders v. Casualty Co., 246 S. W. 613; Corbin v. Mystic Workers, 226 S. W. 66; Stark v. Ins. Co., 176 Mo. App. 574. (c) The word "hereon," according to the context, means "on this," and not "on account of this." Hence the Court of Appeals used the wrong definition, and denied that construction most favorable to the insured.

State ex rel. v. Allen, 295 Mo. 317. (d) And, further, the opinion of the court of appeals denies the meaning of the word as expressed in the contract, and is in conflict with the rule of interpretation, according to context, laid down by this court in Turner v. Fidelity Co., 274 Mo. 265.

*Grant I. Rosenzweig, Guilford A. Deitch* and *Frank G. West* for respondents.

(1) The decision of the Court of Appeals is not predicated upon extrinsic evidence. The contention of relator, that the agreement for antedating of the policy is predicated upon extrinsic evidence and that therefore the decision of the Court of Appeals has violated the precedent established in the cases of Ijams v. Life Assur. Soc., 185 Mo. 471, and Banks v. Casualty Co., 233 S. W. 80, is unsound. Neither of the two cases relied on by relator goes so far as to hold that the application for a policy is such a contemporaneous or antecedent agreement as is merged in the resulting contract, so as to preclude the consideration of the application as a part of the contract. (2) The rule laid down in the Halsey case is inapplicable. An entirely different situation was before the court from that involved in the Halsey case. (3) The earned premium of $65.72 was an indebtedness "on" the policy. The decision of the Court of Appeals that the amount of the earned portion of the premium note was a deductible indebtedness in determining the right to extended insurance, is fully supported by numerous authorities. (4) The decision of the Court of Appeals is not in conflict with any decision of the Supreme Court. Since it does not affirmatively appear from the record that the Supreme Court has rendered any decisions "based on similar facts" to those in the case at bar, the writ of *certiorari* should be quashed. State ex rel. Cox v. Trimble, 279 S. W. 60.

RAILEY, C.—It appears from the record before us that on January 16, 1919, Blanche C. Winters, as administratrix of the estate of Charles Fuller Winters, deceased, filed a petition in the Circuit Court of Jackson County, Missouri, against the Reserve Loan Life Insurance Company, on a policy of life insurance upon the life of Charles Fuller Winters, in the sum of $5,000 with interest and costs. The defendant filed an answer in said cause, which was tried on April 22, 1925, a verdict returned in favor of said plaintiff for $5439.17, and judgment entered accordingly. The defendant above mentioned appealed to the Kansas City Court of Appeals, where the judgment below, on April 6, 1926, was reversed without remanding.

315 Mo.—82.

A motion for re-hearing was filed in the Court of Appeals, and overruled on May 3, 1926. The purpose of this proceeding is to quash the record of the Court of Appeals in said cause, for the alleged reason that the opinion rendered therein is in conflict with prior and controlling decisions of this court based on the same or similar facts.

In the opinion of the Court of Appeals the facts are stated substantially as follows:

That on February 27, 1904, the insured took out with defendant a policy of life insurance in the sum of $5,000; that in January, 1916, a loan of $970 was obtained by the insured on the security of said policy; that later the premium due on February 27, 1916, was paid by the execution of notes, the last of which was for $125.60, due November 27, 1916; that this loan was subsequently extended to January 27, 1917; that shortly before January 22, 1917, the insured made application to defendant for a *new* policy, which reads as follows:

"Kansas City, Mo., Feb. 26, 1916.

"Reserve Loan Life Insurance Co., Indianapolis, Indiana.

"I herewith hand you policy No. 15391 on the 20-pay plan for $5,000, and request that you substitute therefor a standard provision non-participating policy for $5,000 on the Lt'd. Pay Single Prem. plan, an which the premium hereafter will be $131.45 per annum; said substituted policy to be dated Feb. 26, 1916, at age 37, and to recite fully every benefit to be received in connection therewith and said original policy and all benefits thereunder to be cancelled as a consideration for such substitution. Notes of $970 and $125.60 to be cancelled and returned."

The opinion further recites that this application was received by defendant on January 22, 1917; that on said day defendant wrote assured it had received his application, and that its local agent in Kansas City would deliver to the insured a new policy, "issued in consideration of the cancellation and exchange of your old policy. When your receipt for the new policy has been returned to us, we will immediately cancel the loan of $970 on your old policy and the cancelled loan agreement will be returned to you. We will also cancel and return your premium note for $125.60 which was given for the annual premium due Feb. 27, 1916." That the new policy was delivered to insured on January 23, 1917, and the insured executed a receipt for same on that day; that in connection with the issuance of the new policy, the insured borrowed $1010 on a policy-loan certificate; that the new policy recites it was issued in consideration of the payment in advance of a premium in the sum of $1194.25, to be continued upon payment of renewal premiums of $131.45, on the 26th day of February of each year thereafter, until nine such renewal premiums had been paid or until the prior death of the insured; that it is also provided: "This

·policy shall not take effect unless the insured is alive and in good health at the time of its delivery, nor then unless the first premium has been paid;" that the policy was dated February 26, 1916; that it recited "a loan of $1010 made on this policy under date of February 26, 1916;" that under the heading of "Tables of Guaranteed Values" the policy provided:

| Policy Year | Cash or Loan Value | Paid-Up Insurance | Insurance Years | Extended. Months. |
|---|---|---|---|---|
| 1 | $1010 | $2565 | 22 | 4 |
| 2 | 1150 | 2865 | 24 | 2 |

That the policy further provided:

"The reserve on this policy and all surrender values contained therein are based on the American Experience Table of Mortality with three and one-half per cent interest, and in no case does the surrender charge amount to more than two and one-half. per cent of the amount insured hereby.

"In the event of no indebtedness hereon, the values in the above table will apply. Any indebtedness hereon may be paid in cash and the values in the table will then apply, or if not so paid, the cash and loan values will be reduced by the amount of the indebtedness; the paid-up insurance will be reduced in the ratio of the indebtedness to the reserve on the policy; and the extended insurance shall be for as long a term as the balance left after deducting the indebtedness from the net value of the extended insurance as shown in the table, will purchase as a net single premium. Premium payments for fractional parts of a year, if any, will proportionately increase the values in the table. Values after twenty years shall be equivalent to the full reserve on this policy."

That under the heading of "Extended Insurance," it is provided:

"At the expiration of one year from the date hereof, if any subsequent premium be not paid when due, the company will without action on the part of the insured, extend this policy as non-participating term insurance, without loan values, for the term provided in the Table Guaranteed Values opposite the number of years for which annual premiums have been paid."

That under the heading of "Premiums" it provided, among other things, that: "Upon default in payment of any premium or any note or interest thereon, whether such note be given for the first or subsequent premium, this policy shall be null and void and all premiums forfeited to the company, except as herein provided."

The policy further provided that: "This policy and the application herefor . . . shall constitute the entire contract between the parties hereto."

"That when the receipt for the new policy was returned to defendant it cancelled, as of date February 26, 1916, the loan of $970 that

had been made by it; that as the interest on this loan had been paid in advance, the insured was given credit for this interest, amounting to $53.35, which left an indebtedness of $916.65 on account of this loan which was cancelled as aforesaid; that the note for $125.60 which covered the premium and interest thereon upon the old policy from February 27, 1916, to February 27, 1917, was cancelled and the note returned to the insured; that the old policy had a cash surrender value of $1031.35 as aforesaid, and the balance of $114.70 was used in part settlement of the premium on the substituted policy; that on February 20, 1917, the insured wrote defendant that he regretted the "necessity of asking another extension" but that he "would like to have relief for approximately six months;" that in compliance with this request, the company, upon the payment of the interest in advance, sent insured a note for $131.45, the amount of the annual premium which fell due on February 26, 1917, payable upon the new policy; that the note executed and returned by the insured, reads as follows:

"131.45.     Kansas City, Mo., February 26, 1917.

"On the 26th day of August 1917 (before noon), for value received, I promise to pay to the order of the Reserve Loan Life Insurance Company, Indianapolis, Indiana, the sum of $131.45, payable at 900 Odd Fellows Building, Indianapolis, Ind., with interest at the rate of eight per cent per annum after maturity, and with attorney's fees. This note is given to secure extension of time of payment of the premium due February 26, 1917, on Policy No. 58540 in said company bearing date February 26, 1916. If this note be not paid at maturity, said policy shall, without notice or any affirmative act on the part of the company or any of its officers or agents, be null and void, except as provided in the policy; and this note and accrued interest shall, without rebate or discount and without reviving said policy or any of its provisions, be collectible without relief from valuation or appraisement laws, for the proportion of its face, with interest, that the time the insurance has been continued by this note bears to the whole time covered by said premium."

That this note matured on August 26, 1917, but was not paid; that upon the non-payment of the note the policy was marked "lapsed" upon the records of the company; that the latter show the note was cancelled, except as to the earned portion of $65.72; that on August 28, 1917, the company wrote the insured of the non-payment of the note, stating that this caused the policy to become delinquent and asked him to make application for re-instatement; that no answer was made to this letter, and on September 8th and 21st the company again wrote the insured to the same effect; that nothing was done by insured and he died on January 11, 1918; that by virtue of the $1010 loan certificate and the earned portion of the $131.45

premium extension note, there was due the company on August 26, 1917, the sum of $1106.02, which included interest in the sum of $30.30 upon the $1010 loan.

The opinion recites that the evidence further shows that, at the time insured made application for the substitution of the new policy, he was thirty-eight years of age; that the initial and subsequent premiums mentioned in the policy were based upon the age being thirty-seven years; that at the age of thirty-eight the initial premium would have been $1218.50 and the subsequent premium $133.95.

The Court of Appeals, after stating the facts as aforesaid, set out the contention of the respective counsel, reviewed the authorities cited and reversed the case outright, on the theory that plaintiff, as a matter of law, on the record presented to said court, failed to make out a case.

It is insisted by relator that the rulings of the Court of Appeals, on material issues presented in the case before said court, were in conflict with prior and controlling decisions of this court on similar facts, as will more fully appear in the opinion to follow.

I.   Relator's petition charges the Court of Appeals with having held that the evidence of an antedating agreement controlled the express provisions of the policy; that it took effect only upon delivery and payment of the first premium and failed to give effect to the clause that the policy and application constituted the entire contract. It is contended by relator that in so holding the opinion of the Court of Appeals is in direct conflict with the last controlling decisions of this court in State ex rel. v. Allen, 295 Mo. 307, and Halsey v. Ins. Co., 258 Mo. 659, both of which were called to the attention of the Court of Appeals.

As a preliminary to the consideration of above controversy, it is deemed important that we should consider the purpose of our writ and the extent to which we may go in disposing of foregoing issue. It may be said in passing that the Court of Appeals, under the Constitution and laws of this State, when acting within the sphere of its jurisdiction, is a court of final resort, and its judgments are conclusive on this court, when reviewed by *certiorari*, except in those cases where it appears that the rulings of said court are in conflict with some prior and controlling decision of this court on the same or similar facts.

In State ex rel. v. Allen, 256 S. W. l. c. 1052, in speaking of the Court of Appeals, we said: "As long as said court promulgated no rule of law which could be said to conflict with a former ruling of this court on the same or similar facts. it had the inherent right to determine the issues involved. whether its ruling be right or wrong."

To the same effect are the following decisions of the Supreme Court: State ex rel. v. Daues, 285 S. W. 480; State ex rel. Cox v.

Trimble, 279 S. W. 65; State ex rel. Vogt v. Reynolds, 295 Mo. 396, 244 S. W. 929; State ex rel. Calhoun v. Reynolds, 289 Mo. 514, 233 S. W. 483 and fol.; State ex rel. Packing Co. v. Reynolds, 287 Mo. 697, 230 S. W. 642; State ex rel. Wahl v. Reynolds, 272 Mo. 596; State ex rel. Raleigh Inv. Co. v. Allen, 294 Mo. 220, 242 S. W. 77; State ex rel. Cont. Ins. Co. v. Reynolds, 290 Mo. 371.

In view of the law as declared in the foregoing cases, it becomes important to ascertain and determine whether the ruling of this court in Halsey v. Insurance Company, 258 Mo. 659, is based upon facts similar to those at bar. In the Halsey case, on page 669, Judge WOODSON clearly states the issues therein as follows:

"While this record discloses the fact that the application for the insurance of the deceased was dated May 24, 1906, and that the premiums were payable upon that date, yet that was not all of the contract between the parties. The policy itself was just as important a factor in the agreement as was the application for the insurance. The policy was dated May 31, 1906, but it was not delivered until June 5th of that year, which by its express terms was not to become effective until delivered, and the first annual premium paid, which was done on June 5, 1906."

The Court of Appeals in its opinion has fully set out the facts shown by the record as heretofore presented, and which discloses an entirely different situation from that contained in the Halsey case. The latter was not overlooked in the opinion of the Court of Appeals as shown by the following:

"Defendant insists that the court erred in directing a verdict for plaintiff. Plaintiff contends that the policy in suit is covered by the cases of Halsey v. Ins. Co., 258 Mo. 659; Johnson v. Ins. Co., 249 S. W. 115, and Landrigan v. Ins. Co., 245 S. W. 382, and like cases. These cases hold that where there is a difference as to the time stipulated that the premium is to be paid and the time when the insurance is to go into effect, the latter controls, for when the insured has paid a full year's premium he is entitled to a full year's insurance in return therefor; that under such circumstances to give such a stipulation controlling effect would result in the insured's obtaining less than a full year's premium, ending in insured's not obtaining full consideration for the premium paid.

"Plaintiff insists that as the policy provides that it shall not take effect unless the insured is alive and in good health at the time of its delivery and then only in case the first premium has been paid, and as the policy was delivered and the first year's premium paid on January 23, 1917, and as the insured died on January 11, 1918, within the policy year, the insurance was in force at the time of the death of the insured under the rule announced in the Halsey and other cases we have mentioned. In this connection plaintiff argues

that by the express terms of the contract, it was entirely immaterial that a former policy existed and was exchanged for the policy sued on.

"Defendant insists that the rule announced in these cases has no application for the reason that they involved original insurance policies and this case covers an entirely different situation, that is, the substitution of one policy for another, and that there was ample consideration for the antedating of the policy in suit. Plaintiff does not agree with this contention of the defendant, but states that even assuming that there was an antedating agreement and that the fact that the substitution of policies is material, the dating of the substituted policy has no effect in determining the time when the insurance began, because the policy expressly provides that it takes effect from the time of its delivery and payment of the first premium (which occurred on January 22, 1917) and while the insured is in good health; that as the premium on the new policy had been paid by the loan agreement so as to carry the policy beyond the date of insured's death, the premium note of $131.45, and the failure to pay upon which defendant's plea of forfeiture is based, was without consideration and void.

"We do not think that the rule laid down in the Halsey and other cases mentioned has any application to the facts involved herein. There was ample consideration for the antedating of the policy (Johnson v. Life Ins. Co., 143 Fed. 950). Negotiations for the new policy were commenced by insured who for some reason desired to discontinue his old policy and to take out a new one. He was indebted to the insurance company and wanted this indebtedness cancelled and desired that the premium on his new policy be based on the age of thirty-seven years instead of his true age, which was thirty-eight, thus reducing the amount of the premium that was necessary to be paid. There is no evidence as to how the amount of the initial premium of $1194.25 on the substituted policy was arrived at or what it was made up of. Of course, it was quite immaterial as to how the amount was computed for the reason that the parties were at liberty to enter into any sort of a contract they desired without interference by the courts. except for fraud, mistake, or the like, or lack of consideration.

"As before stated, insured desired his indebtedness of $970 and $125.60 cancelled by the company. He wanted a new policy on the Limited-Pay Single-Premium plan and desired to pay a premium therefor based upon his age as of February 26, 1916, instead of his real age at the time he made the application, which was thirty-eight. There is no question but that there was ample consideration for antedating the policy, that is to say, the insured thereby procured the cancellation of $1095.60 indebtedness that he owed the company and secured an agreement that the company would carry the insur-

ance upon the payment by him of a premium in a similar amount that he would have been required to pay had the policy been dated as of the date of its delivery. As before stated, we cannot inquire into the question as to whether plaintiff received enough for his agreement to the antedating of the policy, or, in other words, as to whether the insured exercised good judgment in entering into such an agreement. While perhaps not material, it is well to state that the insured obtained a full year's insurance beginning February 26, 1916, for the consideration mentioned in the policy, as the old policy, supplemented by the new, was in force during that entire period, and it was stipulated that the premium that he had paid on the old policy therefor should be returned to him, and this was done.

"It is urged that the date of the policy has no legal importance although the application had requested that it be pre-dated, and that the policy be issued at the age of thirty-seven. Of course, in this connection, plaintiff is attempting to come within the Halsey and other cases which hold that the date of the delivery of the policy controls as to when the policy goes into effect. However, those were cases where original insurance was taken out and did not involve a substitution of policies. The provision in the policy involved in the case at bar concerning its taking effect upon delivery and payment of the premium while the insured was alive and in good health, was entirely consistent with the application for the policy, and what was intended to be done by the parties in the way of substitution of policies. There is no ambiguity. While the application was dated February 26, 1916, it was not signed by the insured and received by the company until January 22, 1917. The new policy could not have gone into effect prior to that time, and as the company had not agreed in advance to issue the policy as requested in the application, it had a right to put into the policy any provision in reference to its going into effect that it desired, so long as it was based upon a consideration and the insured was willing to agree to its terms, which he did by accepting the policy. Of course, the old policy remained in effect until the going into effect of the new policy. There is nothing inconsistent with the idea of a contract going into effect on a certain date and its covering a past situation or transaction as well as the future. We know of no law that would prevent the parties from agreeing that the contract entered into on January 22, 1917, should take effect as of February 26, 1916. To say that the pre-dating of the policy has no legal significance is to wholly ignore the application signed by the insured and what he evidently intended should be the effect of it."

The Halsey case was here on direct appeal from the circuit court and was not a *certiorari* proceeding. In the Halsey case this court on appeal had the legal right to pass upon all of the law questions

involved in the case. In this proceeding by *certiorari*, it can only be determined whether the opinion sought to be quashed is in conflict with a former and controlling decision of this court on similar facts. As to all other questions the ruling of the Court of Appeals, whether right or wrong, is conclusive in this proceeding.

We are of the opinion that the decision of the Court of Appeals was not in conflict with our rulings in the Halsey case, nor with those of State ex rel. v. Allen, 295 Mo. 307, based on similar facts.

II. We see no necessity for prolonging this discussion. The Court of Appeals, in a well-considered opinion, has held on the facts presented therein that the relator was not entitled to recover in the action pending in said court. We do not find that the ruling of the Court of Appeals is in conflict with any former or controlling decision of this court on similar facts.

It follows that our writ of *certiorari* was improvidently issued and should be quashed. It is so ordered. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.