THE STATE EX REL. A. F. ARNDT AND OLIVIA ARNDT v. ARGUS COX ET AL., JUDGES OF SPRINGFIELD COURT OF APPEALS.—38 S. W. (2d) 1079.

Division One, May 21, 1931.

*F. W. Barrett* for relator.

*Farrington & Curtis* for respondents.

STURGIS, C.—This is an original proceeding in this court by certiorari for the purpose of having this court quash the opinion and judgment of the Springfield Court of Appeals in the case of Arndt v. Frye, 20 S. W. (2d) 920. The case in question was a suit brought by plaintiffs ·Arndt as depositors in the failed Bank of Battlefield against the defendant William Frye, the president of the failed bank, to collect from him the amount of the deposit lost to such plaintiffs by reason of the bank's failure. That suit was brought and tried in the Circuit Court of Greene county and was based on the provisions of Sections 11763 and 11764, Revised Statutes 1919 (now Secs. 5381, 5382, R. S. 1929). The first one of these sections forbids the president or other officer of a state bank to receive or assent to the reception of a deposit in such bank ''after he shall have knowledge of the fact that it is insolvent or in failing circumstances,'' and makes the officer violating such provisions of the statute individually responsible in a civil action for the deposit so received. The second one of the sections mentioned provides for the joint and several liability of the officers and agents of the bank charged with assenting to the reception of such deposit, with the further provision that ''the fact that such bank was so insolvent or in failing circumstances at the time of the reception of the deposit charged to have been so

received shall be prima-facie evidence of such knowledge and assent to such deposit on the part of the officer so charged therewith."

That case was tried in the circuit court on a proper petition and answer raising the issues of whether or not the bank was in fact insolvent or in failing circumstances at the time the deposit was received, and if so, whether the defendant had knowledge of such condition and assented to the deposit with such knowledge. The trial court, sitting as a jury, found for plaintiffs and held the defendant liable, but on an appeal duly taken the Springfield Court of Appeals reversed such judgment without remanding it, holding that under the law and facts proven the defendant was not liable. The decision of the Court of Appeals in this case of Arndt v. Frye, now called in question, reported in 20 S. W. (2d) 920, is referred to here instead of copying the same in full. In the present proceeding the relators are the plaintiffs in that suit and the respondents are the honorable judges of the Court of Appeals, whose opinion and judgment are here for review.

The relators do not controvert the correctness of the rule that in certiorari cases calling in question a decision of the Court of Appeals as being in conflict with a controlling decision of this court, this court in such review will treat as correct the evidentiary facts as found and stated by the Court of Appeals and will not search out the record filed in the Court of Appeals to ascertain if the evidentiary facts are correctly stated in the opinion. State ex rel. v. Reynolds, 289 Mo. 479, 233 S. W. 219, where the court said: "Under our rule, we take the evidentiary facts in the opinion for the facts in the case."

Without going into lengthy detail, we will say that the evidence shows that the Bank of Battlefield was a small country bank with a capital of $10,000. The bank failed and went into the hands of the Commissioner of Finance on August 25, 1925. Roy Neff was cashier, in active charge, and tended to all the detail business of the bank, including keeping the books, making the financial statements, etc. The board of directors, of which defendant Frye was president, met once a month, but did little more than review the loans made by the cashier. Defendant Frye was a well-to-do farmer, owned five shares of stock in the bank, was its president, but was at the bank only occasionally, took no part in its active management, and was without knowledge of bookkeeping and had no experience in active banking. He was one of the largest depositors when the bank failed and had recently made substantial deposits. The cashier, Neff, and his father-in-law owned the majority of the stock of the bank and the record shows no reason for doubting his integrity. The immediate cause of the closing of the bank was the discovery and confession by Neff to a bank examiner, there for the purpose of making an examination of the bank's affairs, that he had embezzled $24,000 of the

bank's assets and had covered it up by false entries in the books of the bank. His method of embezzlement was to take out for his own use a part of the cash deposited day after day and enter on the books of the bank only the amount actually paid into the bank's safe. He kept a private book showing the true facts. He was convicted for this embezzlement and went to the penitentiary. The period of time covered by his embezzlements is not shown definitely, but the bank examiner who examined the bank periodically before it was closed failed to discover any shortage in his accounts. The financial statements of the bank made and published about every six months showed the bank to be solvent and with a surplus. Of course these statements prepared by the cashier were based on his false books, and while correct as to the bank's assets, showed liabilities much less than the truth. According to the last published statement of the bank made some two months before it was closed by the Bank Commissioner, the assets of the bank, loans and $150 in overdrafts amounted to $37,587, plus the cash on hand and in other banks, and the liabilities, exclusive of capital stock and surplus, consisting of deposits, bills payable and rediscounts (quite small) amounted to $30,319. The deposits, as shown by this statement and the books of the bank, amounted to only $13,596. In reality, on account of the cashier's embezzlements, the deposits were near $40,000. The bank owed (bills payable and rediscounts) $16,722, but an amount of the assets (notes receivable) in excess of this amount was pledged as collateral security. Practically the same condition of the assets and liabilities of the bank appeared from the bank's books and the published statements for the two years or more preceding the bank's failure. To one who had no knowledge of the cashier's embezzlements and consequent falsity of the bank's books, it would appear that, taking the pledged collateral notes as being worth substantially the amount of the bills payable, then the bank held notes amounting to over $21,000 with which to meet deposits of $13,500. On the liquidation of the bank under the Commissioner of Finance, the amount actually collected on the $35,000 in notes then held by the bank amounted to some $26,000, an amount little, if any, short of the bank's indebtedness other than capital stock, as same appeared on the books of the bank. Other facts, which we take as correct, will be found in the opinion of the Court of Appeals, supra.

The Court of Appeals held, in effect, that in determining whether a bank is insolvent or in failing circumstances within the meaning of our statutes, the capital stock and surplus should not be considered as debts of the bank. This, we think, is in accordance with the definitions of the terms "insolvency" and "failing circumstances" adopted by this and other courts in treating of the statutes in question. "Insolvency, as applied to banks, means inability to pay debts

in the usual and ordinary course of business." [State v. Lively, 311 Mo. 414, 279 S. W. 76, 80; State v. Burlingame, 146 Mo. 207; State v. Darrah, 152 Mo. 522.] "Insolvency is that condition of affairs in which a merchant or business man is unable to meet his obligations as they mature in the usual course of business." [2 Morse on Banks and Banking, 1035, quoted in White v. Poole, 220 Mo. App. 982, and Akin v. Hull, 9 S. W. (2d) 688.] The capital stock and surplus of a bank are not obligations which mature and must be paid in the usual course of business. [State v. Lively, 311 Mo. 414, 279 S. W. 76, 80.]

On these and other evidentiary facts set forth in the opinion, which we must take as correct, the Court of Appeals held that there was no evidence on which to base a finding that the Bank of Battlefield was in fact insolvent in 1925 when the deposits sued for were received, leaving out of the calculation the amount of the cashier's embezzlements; nor was there any substantial evidence to warrant a finding that the defendant had knowledge of such insolvency when the deposits sued for were received into the bank. The court's holding with reference to this matter is in these words: "Instead of being insolvent, independent of the embezzlement, it (Bank of Battlefield) would have been in excellent condition, and the bank examiner was absolutely right in his conclusion that had there been no embezzlement, there would have been no necessity for closing the bank. . . . If we charge defendant with notice of everything appearing in these (published) statements, and we certainly cannot charge him with notice of anything else that tended to show the condition of the bank, we must still conclude that the plaintiff failed to show that defendant had any knowledge of the bank's insolvency at any time prior to the date of the examination in August, 1925, when the embezzlements of the cashier were discovered. Until these embezzlements were discovered there was nothing to give notice to anybody that the bank was in fact insolvent, for if the books kept by the cashier had correctly stated the condition of the bank, it was not insolvent."

The Court of Appeals, therefore, after considering all the evidence, held that there was no substantial evidence to support a finding for plaintiff, and that as a matter of law, on the facts presented, plaintiff was not entitled to recover. The right of the appellate court to do this cannot be questioned and decisions of this court without number might be cited to sustain this position. The relator invokes the rule, equally well established, that when there is substantial evidence to sustain the finding of the trial court, the appellate court will not examine and weigh the evidence to determine the correctness of such finding. [Maxwell v. Dunham, 297 S. W. 94; Jordan v. Davis, 172 Mo. 599.] Such decisions are not applicable, for the reason that the court did not here weigh the evidence and come to a

conclusion different from that of the jury or trial judge, but merely determined, as a matter of law, that there was no substantial evidence supporting the finding of the trial judge.

We take it that the relator concedes that the only question presented and to be considered by this court on a proceeding by certiorari to bring up for review an opinion of the Court of Appeals is whether or not the Court of Appeals has in its opinion refused to follow or be bound by the last previous ruling of this court on some question vital to the case, that is to say, whether the opinion of the Court of Appeals in question creates a conflict between its rulings in the instant case and a previous ruling of this court on the same question of law. This implies that the facts ruled by the Court of Appeals are essentially the same and not different in principle from the facts ruled by this court. [State ex rel. v. Trimble, 315 Mo. 1295, 290 S. W. 115.] State ex rel. v. Cox, 274 S. W. 373, is applicable here, and the court there said: "The relator places its main objection to the opinion of the Court of Appeals on its construction of the facts. It is claimed that the accident could not have happened in the way the plaintiff Smith claimed it did; that the jury was not required to find certain facts which relator thinks should have been found in order to authorize recovery. These are points which are not considered or passed upon by the Court of Appeals; we will not inquire whether they were presented to the Court of Appeals for consideration, or whether the evidence is susceptible of the construction claimed for it by the relator. As we said at the outset, we are limited to the law pronounced by the Court of Appeals and the facts stated in the opinion. To hold otherwise would be to enlarge the burdens of this court, and go far beyond the province of a writ of certiorari."

The relator insists that the opinion of the Court of Appeals is in contravention of the statutes, Sections 11763 and 11764, Revised Statutes 1919, heretofore mentioned as being the basis of the suit of Arndt v. Frye, or at least that such opinion fails to give such statutes full force and effect. The proper construction of any statute is as much within the province of the Court of Appeals as of this court, and an opinion of the Court of Appeals construing a statute and giving it a certain force and effect cannot be called in question by certiorari unless this court has in some case on similar facts given the same statute a definite construction which the Court of Appeals in the instant case refuses to follow. Nor are we concerned with the fact, if it be a fact, that another Court of Appeals has placed on the statute a different construction than the one now in question. This is said because relator insists that the opinion of the Springfield Court of Appeals now in question is in conflict with the case of White v. Poole, 220 Mo. App. 973, 272 S. W. 1021, a decision

of the Kansas City Court of Appeals. We do not agree, however, that there is any conflict in the present case with the case of White v. Poole. Certainly it is not in conflict on the point that the knowledge of insolvency or failing circumstances mentioned in the statute is actual knowledge as distinguished from constructive knowledge or knowledge arising from negligence or inattention to the business affairs of the bank; for it is there said that, "Of course, the knowledge provided for in the statute is actual knowledge, but knowledge, like any other fact, may be inferred (or proven) from the facts and circumstances." The present case goes even further in this respect by holding that the degree of negligence sufficient to fix liability on that ground, without any actual knowledge, is said to be "such gross negligence as would amount to fraud in law upon the depositors and other creditors," citing Utley v. Hill, 155 Mo. 232. What this court actually said in that case is at page 270: "Of course, it must not be understood that it is intended to be held that a director can shut his eyes to facts, circumstances and conditions, and then say he did not know what he must have seen if he had used his senses; for such conduct would be fraudulent and wilful disregard of duty. No such condition is presented by this record."

One of relator's assignments of error is that "the respondent judges erred in holding that the knowledge of an officer, to fix liability, must be absolute and that what he should have known or what might be inferred should not be considered." This, we think, is a misconstruction of the decision in question. What the Court of Appeals holds is that the knowledge of insolvency on which liability is predicated is actual knowledge instead of constructive knowledge—what one does know rather than what he ought to know. The language used by the Court of Appeals is: "The basis of liability fixed by the statute is actual knowledge of the insolvency or failing condition of the bank at the time the deposits were received. The statute makes no provision for fixing liability upon an officer or director of a bank by reason of negligence in the performance of his duty, no matter how gross that negligence may be, but the courts, in some instances, have said that if the negligence is so gross as to amount to a fraud in law, then he will be held responsible even though he had no actual knowledge. . . . All of which means that unless actual knowledge is shown, he cannot be held liable on the ground that his lack of knowledge was his own fault, unless it be shown that his negligence was so gross and his lack of knowledge so inexcusable as to amount to a fraud in law against the depositors and other creditors of the bank."

This ruling is not in contravention of, but in accord with the rulings of this court in Utley v. Hill, 155 Mo. 232, 258, where the court propounds and answers in the negative this question: "First, in

an action under section 2760, Revised Statutes 1889, by a depositor against the directors of a bank, who assent to the reception of deposits after they have knowledge that the bank is insolvent or in failing circumstances, are such directors individually responsible for such deposits, unless it appears, from the whole case, that they had actual knowledge, or are they liable if it appears that they were *negligently ignorant* of the condition of the bank, in that they could have ascertained its condition if they had not neglected to investigate or keep posted as to the affairs of the bank, and are they so charged by law with the duty of managing the business of the bank that they are charged, with knowledge, and are estopped to plead ignorance of its condition?'' In answering this question, this court in Utley v. Hill pointed out that it had previously ruled in Bank v. Hill, 148 Mo. l. c. 396, that ''there could be no recovery by depositors against directors of a bank because of the negligence of the directors in managing the affairs of the bank,'' and in Fusz v. Spaunhorst, 67 Mo. l. c. 264, that ''directors were not liable individually to depositors for mere non-feasance,'' and then the court further' said: ''It (the statute) was intended to reach and punish the guilty, not to ruin and disgrace the honest directors, who acted in perfect good faith and without guilty knowledge.'' The Court of Appeals does not hold that the actual or guilty knowledge necessary to fix liability cannot be proven, like any other fact, from the facts and circumstances. What it does hold is that the evidence produced at the trial, whether direct or circumstantial, is not sufficient to show actual knowledge of the bank's insolvency on the part of defendant Frye, and in so holding does not conflict with Utley v. Hill, supra. In fact, this court in that case reviewed the evidence and held exactly the same thing.

Nor is the opinion of the Court of Appeals now in question in conflict with State v. Buck, 120 Mo. 479. That is a criminal case and it may be true, as relator elsewhere contends, that rules of law applicable to criminal cases are not always applicable to civil cases. In the Buck case the court held valid and constitutional the statutory provision making the fact of the bank's failure prima-facie evidence of its insolvency at the time the deposit was received and of the bank's officers' knowledge of such fact. The court in that case said: ''It was only about one month from the date of the deposit until defendant's bank failed and closed its doors. This of itself had a strong tendency to show that the bank was in failing circumstances, if not in fact insolvent, at the time the deposit was received, and the law which makes its failure so recently thereafter prima-facie evidence of knowledge upon the part of its officers that it was insolvent or in failing circumstances at that time, is neither unjust nor unconstitutional. . . . To make receiving money on deposit under such circumstances prima-facie evidence of knowledge on the part of the

owner of the bank that it was then in failing circumstances or insolvent, violates no constitutional guaranty. It leaves a party thus connected with the bank ample opportunity to make his defense. The party can be a witness in his own behalf and it can never be difficult for him to show what the facts really are. If the bank has been robbed by some trusted clerk, without the knowledge of its officers, or sudden or unexpected failure of its correspondents have brought about its insolvency or failing condition, such and other matters of like character are of easy explanation. Receiving the money on deposit, knowing that the bank was in failing circumstances or insolvent, was in itself unlawful, the proof of excuse or justification for which was on the defendant, and if he fail to excuse or justify himself, the law implies a criminal intent. . . . The burden of proof is not really changed. The statute enables the State to make a prima-facie case by proof of the deposit and failure of the bank. But the defendant can show the circumstances attending the failure, and any facts tending to exonerate him from liability, and then on the whole case, the burden still rests on the prosecution to establish his guilt beyond a reasonable doubt. . . The presumption of innocence with which defendant is clothed, and which never shifts, rests with him throughout, and notwithstanding the prima-facie case made out by the State, it must still go further. 'A prima-facie case will not warrant a conviction.' [State v. Rector, 23 S. W. Rep. 1074.]'' See also State v. Sanford, 317 Mo. 865, 879.

As applied to a civil action, like the present one, it doubtless is true that the rule of criminal law requiring the plaintiff to prove defendant guilty beyond a reasonable doubt would not apply, and the defendant in a civil action is not clothed with the presumption of innocence as in criminal cases; but it yet remains that in a civil action, as in a criminal action, the defendant may make a complete defense by disproving knowledge, entitling him to a directed verdict, notwithstanding the fact that plaintiff makes a prima-facie case of knowledge by showing the bank's insolvency, and the appellate court has a right to so rule. In fact, when a court is called on to rule whether there is *any* evidence sufficient to support a certain finding, it makes no difference whether it weighs the evidence by the rule in criminal cases of ''beyond a reasonable doubt'' or the civil rule of preponderance of the evidence. If there is no evidence tending to establish a fact, then the proof of it fails to measure up to either standard, or rather there is nothing to weigh or measure by either standard. When, therefore, the court said in the Buck case, supra, ''The party can be a witness in his own behalf and it can never be difficult for him to show what the facts really are. If the bank has been robbed by some trusted clerk, without the knowledge of its officers, etc.,'' it certainly meant that the defendant could make a

complete defense to the prima-facie case entitling him to a directed verdict, and mentions in that connection the very defense that was made here, to-wit, that the bank was "robbed by a trusted clerk, without the knowledge of its officers."

If relator is asking this court to rule that in a civil case where the plaintiff makes a prima-facie case of knowledge on the part of the bank officer by evidence showing the bank's insolvency at the time the deposit is made, the question of knowledge is for the jury, regardless of the fact that defendant has shown unequivocally by his evidence that he did not have such knowledge of the insolvency, we decline to so rule. The relator has correctly stated the law in this respect in his application for writ of certiorari, wherein he says: "If we understand the law correctly, we think that the presumption provided for in this statute has the same effect, and is treated by the court in the same manner, as other presumptions in civil cases, i. e., when plaintiffs comply with the statute by proving that the bank is in a failing condition at the time the deposits were made, then a prima-facie case is made for the plaintiff, and that with nothing further the plaintiff would be entitled to a directed verdict. It then devolves upon the defendant to show that he did not have actual knowledge or that he did not assent to the reception of the deposits. When he has done either, the presumption provided for by the statute is destroyed as a presumption, and it then devolves upon the plaintiff to come forward with additional proof of the actual knowledge on the part of the officer as to these facts. If he does not do so, and with nothing further, the defendant would be entitled to a directed verdict." The opinion of the Court of Appeals in question is in accord with the rules of law thus stated.

The principles applicable to this case are well ruled in the case of Downs v. Horton, 287 Mo. 414, which opinion incorporates the opinion of the Springfield Court of Appeals in the same case. In that case the plaintiff sued the makers on a promissory note. The defendants made the defense that the note was procured by fraud, which plaintiff then admitted, but set up as an affirmative defense that plaintiff was a purchaser for value in good faith and without any knowledge of the fraud. Under the statute, proof or admission that the note is tainted with fraud is made prima-facie evidence that plaintiff had knowledge of the fraud at the time of purchasing the note and casts on plaintiff the burden of showing himself to have had no such knowledge. The court there held that the knowledge which defeats the plea of being a purchaser in due course is actual knowledge, as distinguished from negligence in making inquiry or in pursuing facts putting a reasonable person on inquiry, as is the case here. The court there held that notwithstanding the prima-facie case of knowledge on the part of the purchaser of a note procured by fraud,

and the burden cast on him of disproving such knowledge, yet if plaintiff's evidence on this point is clear, cogent, convincing and uncontradicted, and there is no substantial evidence to the contrary other than what it takes to make the prima-facie case, then the presumption or prima-facie evidence of knowledge was completely overcome and plaintiff was entitled to a directed verdict. The court there says that after defendant has made the prima-facie case of plaintiff's knowledge: "The plaintiff then gives in evidence all the facts and circumstances under which he acquired the paper and the presumption takes flight. Let it be assumed that plaintiff's evidence is such that his good faith and want of notice is the only inference that a fair-minded person could draw from it, it then devolves upon defendant, under the burden of proof resting generally upon him, to prove specific facts tending to show plaintiff's actual knowledge of the fraud or his bad faith. Let it be further assumed that defendant offers no such evidence, then clearly he has failed to offer *any* evidence in support of his affirmative defense that *plaintiff had notice of the fraud when he took the paper,* and the plaintiff, on the pleadings, is entitled to a directed verdict. . . . The principles governing the shifting of the burden of evidence during the progress of a trial, by reason of the presumptions that rise and disappear as the evidence goes forward, are not peculiar to suits on negotiable instruments. They are of general application."

The Court of Appeals did not, therefore, rule contrary to the decisions of this court in holding that notwithstanding the prima-facie case made by plaintiff, the defendant's evidence completely destroyed the prima-facie case, and that on the whole case there was no substantial evidence supporting a finding that defendant had knowledge of the bank's insolvency at the time the deposits in question were made.

It may be, as relator contends, that the Court of Appeals stated the matter too broadly when it said: "Notwithstanding the statute, a case for plaintiff cannot be made by merely showing that the deposits were made and that the bank afterwards failed. There must be additional proof before a case for the jury can be made in either a criminal or civil case." This statement of the law is taken substantially from State v. Buck, 120 Mo. 479, 495, a criminal case, where the court said: "The presumption of innocence with which defendant is clothed, and which never shifts, rests with him throughout, and notwithstanding the prima-facie case made out by the State. it must still go further. 'A prima-facie case alone will not warrant a conviction.'" It is also there said that the rule requiring the State to prove a defendant guilty beyond a reasonable doubt is not abrogated by the statute, but still obtains. This is the law in a criminal case, but hardly applicable to a civil action. However, this is a preliminary

general statement of the law by the Court of Appeals and does not apply to the facts of the case then under consideration. The court was not called on to determine whether the plaintiff in the case of Arndt v. Frye made a case by a mere showing that deposits were made and the bank afterwards failed—that additional proof was necessary before plaintiff could have a verdict in either a civil or criminal case. The defendant invoked no such rule, but assumed that plaintiff had made a prima-facie case by proving the bank's insolvency at the time the deposits were made, and on which he was entitled to a verdict without more; and the defendant assumed the burden of showing that he had no knowledge of such condition. What the Court of Appeals was called on to decide and did decide was that, when defendant's evidence was all in showing his utter ignorance of the bank's insolvency when the deposits were made, and that the bank was not insolvent except as the result of the cashier's embezzlement of its funds, which fact was not known or even suspected by defendant or anyone else, so far as the record shows, till the day the bank failed, then there was no substantial evidence to support a finding for plaintiff—that as plaintiff had nothing to stand on except the presumption arising from the bank's insolvency, which completely disappears in the light of defendant's evidence, there is nothing left to support a verdict for plaintiff.

The relator assigns error in that the respondents erred in holding that there was no legal evidence that the bank was insolvent or that the defendant so knew when the deposits sued for were made. The opinion in question, however, plainly shows that the Court of Appeals does not hold that there was no evidence of the bank's insolvency when the deposits were made. What the court holds is that the bank's insolvency was caused solely by the embezzlement of its funds by the cashier. This does not mean that certain notes and other property of the bank were of no value or of less value than same were rated on the bank's books. To be insolvent, the bank's available assets would have to be reduced to less than its liabilities, leaving out the capital stock and surplus. Also we may not agree with what is said in the opinion as to past-due paper not being any evidence of insolvency, citing Akin v. Hull, 9 S. W. (2d) l. c. 690. In White v. Poole, 220 Mo. App. 973, 272 S. W. 1021, the fact that notes are past due was considered as some evidence of the *insolvency of the makers,* and this may be the better rule. However, these are all court of appeals cases and we are not here concerned with conflicts, apparent or real, in such rulings. Nor do these matters have any vital bearing on the question of defendant Frye's knowledge of the bank's insolvency brought about by the cashier's embezzlement of its funds, which is the vital point ruled by the Court of Appeals and held to have no sufficient evidence to support an affirmative finding

thereon. . In so holding that court is not in conflict with any previous ruling of this court.

It follows that our writ was improvidently issued and should be quashed. It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.