KIRK, *Appellant,* v. MATTIER *et al.*

| 140 | 23 |
| 75a | 120 |

### Division Two, June 8, 1897.

1. **Ejectment:** FORFEITED LEASE: COAL MINE. An instrument that "demised and leased" a certain tract of ground for mining purposes only, for a period of ten years, and gave to the second party the right to possession and to erect gates and other necessary buildings thereon, is held to be a lease and not a license. *Held* also that a coal mine is not as incorporeal hereditament; *held,* also, that as said lease contained a clause that it was to be forfeited and the lessor could re-enter upon a failure by the lessee to perform the conditions thereof, an action in ejectment would lie to dispossess the lessee upon a breach of the condition.

2. **When Ejectment Will Lie.** Ejectment will lie for any incorporeal hereditament of which the sheriff can deliver possession.

*Appeal from Jasper Circuit Court.*—HON. W. M. ROBINSON, Judge.

REVERSED.

*McAntire & Gardner* for appellant.

(1) It was a lease, not a license. *Hobart v. Murray,* 54 Mo. App. 256. (2) The lease contained a covenant to work continuously and in good faith, and also to

sink a shaft two hundred feet deep upon the land within one year, and upon a failure to do either of these things the lease was to be forfeited and the plaintiff could enter. The remedy of the plaintiff was ejectment instead of an actual entry. *Ruddick v. Railroad*, 116 Mo. 26; *Green v. Railroad*, 82 Mo. 653; *Beatty v. Gregory*, 17 Iowa, 109; *Beatty v. Gregory*, 9 Mor. Min. Rep. 234; *Boone v. Stover*, 66 Mo. 434; *Hamilton v. Wright, Adm'r*, 28 Mo. 199. (3) While at common law it was necessary for the grantor to enter upon land to work a forfeiture on condition broken; the modern rule is that the bringing of an action of ejectment will operate as a common law entry. *Ruddick v. Railroad*, 116 Mo. 26; Tredman on Real Property, sec. 277; *Osgood v. Abbott*, 58 Me. 73; *Jackson v. Allen*, 3 Cowen, 220; *Bowen v. Bowen*, 18 Conn. 525; *Gray v. Blanchard*, 8 Peck, 284. (4) The defendants had an interest in the land greater than that of an incorporeal hereditament until condition broken. *Desloge v. Pierce*, 38 Mo. 588; R. S. 1889, secs. 7034, 7035, and 7038.

*Edward C. Crow* for respondent.

The grant of the right, license, power, and authority to dig, work, mine, and search for and remove, all ores within certain lands, and make the same merchantable and dispose of the same for a certain period of time upon a fixed royalty gives the grantee an incorporeal hereditament and is a license and not a lease. *Iron Co. v. Wright*, 32 N. J. Eq. 248; *Hanley v. Wood*, 2 B. & A. 734 (Kings Bench, 1819); *Gillette v. Treganza*, 6 Wis. 343; *Gloninger v. Franklin Coal Co.*, 55 Pa. St. 9. (2) A grant of the privilege of raising iron ore on the land of the grantor at a certain price per ton is an incorporeal hereditament. *Iron Co. v. Iron Co.*, 32 Pa. St. 241; *Funk v. Haldeman et al.*, 53 Pa. St.

229; *Grubb v. Grubb*, 74 Pa. St. 25. (3) Ejectment can not be maintained for incorporeal hereditament. 6 Am. and Eng. Ency. Law, p. 232; *Clement v. Youngman*, 50 Pa. St. 341; *Caldwell v. Fulton*, 31 Pa. St. 483; *Taylor v. Gladden*, 40 Mich. 232. (4) The common law rule that an action of ejectment would not lie for anything upon which an entry could not be made, or of which the sheriff could not deliver possession. The interest must be visible and tangible so that a sheriff may deliver possession to plaintiff under the writ of possession issuing out of the courts. Newell on Eject., ch. 2, sec. 1; *Black v. Hepburn*, 2 Yates, 331. (5) Ejectment will not lie for the recovery of an easement or an incorporeal hereditament, and the question to be determined in these mining cases is whether the contract is a grant of the mines and metals in place in the ground, or whether the contract is simply a grant of a license to mine or search for metals or minerals or a privilege to dig in mines; if the contract grants the metals and minerals in place in the ground, ejectment will lie; if the contract simply grants the right to mine and remove the minerals found, ejectment will not lie; injunction or an action for damages would be the proper remedy. *Grubb v. Bayard*, 2 Wall. Jr. 81; *Grubb v. Grubb*, 74 Pa. St. 25; *Hanley v. Wood*, 2 B. & Ald. 724; *Cheathem v. Williamson*, 4 East. 469; *Funk v. Haldeman*, 53 Pa. St. 229; *Harlow v. Lake Superior Co.*, 36 Mich. 105; *Union Petroleum Co. v. Blevin Petroleum Co.*, 72 Pa. St. 173. (6) Ejectment will not lie for those parts of land necessarily occupied by shafts or mining excavations, or erections under mining reservations made and used only for mining purposes; the use of such parts of the land is in the nature of an easement which is appurtenant to the mine. *Ericson v. Mich. L. & I. Co.*, 50 Mich. 604; Newell on Eject., sec. 31. (7) The right to mine and

remove minerals with the right of egress and ingress as an incorporeal hereditament. *Gloninger v. Coal Co.*, 55 Pa. St. 9; *Doe v. Wood*, 9 Mor. Min. Rep. 182; *Iron Co. v. Iron Co. et al.*, 32 Pa. St. 241. (8) An action of ejectment will not lie for the right to quarry stone. *Clark v. Brazzeau*, 1 Mo. 290; *Brown v. Chadwell*, 7 Irish C. L. P. 101.

GANTT, P. J.—This is an action of ejectment for the following real estate in Jasper county, Missouri, to wit, all of the lead, zinc and other ore substances of that part of said land underneath the surface and in the shafts thereon of the southeast quarter of the northeast quarter of section 33, township 28, range 32, with the exception of a strip of land four hundred feet wide running north and south on the west side of said southeast quarter of the northeast quarter, less two mining lots two hundred feet square in the northeast corner of said strip. And also all that part of said land underneath the surface of the strip of land four hundred feet wide, being the south side of the northeast quarter of the northeast quarter of section 33, township 28, range 32, and the shafts thereon.

Ouster is laid as of November 11, 1893, and damages claimed in the sum of $200.

The answer of defendant Bremmerman is a general denial. No answer was filed for the other defendants who appeared to be mere day laborers for defendant Bremmerman. The trial court rendered judgment for the defendant and plaintiff appeals.

On the trial plaintiff offered and read in evidence a warranty deed to himself in due form, properly acknowledged from John J. Kirk and wife and Stephen P. Kirk and wife to James A. Kirk, the plaintiff, of date October 25, 1882. He also offered testimony showing that he had been in the peaceable possession

of all of said lands for ten years. He then offered and read in evidence the following instrument in writing:

"MINING LEASE.

"This indenture, made on the 13th day of October, 1892, by and between James A. Kirk of Jasper county, State of Missouri, party of the first part, and Frederick Bremmerman of Jasper county, State of Missouri, party of the second part. *Witnesseth* that the party of the first part, in consideration of the sum of $1 to him paid and hereby acknowledged, does by these presents demise and lease unto said party of the said part, his heirs and assigns, for mining purposes only, for the term of ten years from the date above written, the following described real estate in Jasper county, to wit:

"The S. E. one fourth of the N. E. one fourth of section 33, township 28, range 32, with the exception of a strip of land 400 feet wide, running north and south on the west side of the S. E. one fourth of the N. E. one fourth, less two mining lots 200 feet square, in the northeast corner of said strip. And also a strip of land 400 feet wide off the south side of the N. E. quarter of the N. E. quarter of said section, township and range, dependent at all times upon the full and proper performance of the following conditions: *First.* The party of the second part shall within ten days from date, begin mining said land in good faith, sink a shaft to the depth of 200 feet, within 12 months of the date above written, and shall, when required by the first party, place on said land pumps and machinery to drain the same of water so as to permit the efficient mining thereof. *Second.* Said party of the second part shall mine said land in a good and miner-like manner, shall keep all shafts and drifts well and securely timbered and supported. Mining shall be

carried on in good faith continuously, and shall not be suspended at any time, except on account of unavoidable accidents, for a longer period than ten days at any one time, without the written consent of the party of the first part, and the working of said land for one or several days between cessation of work thereon for ten days at different periods, shall not be construed as a compliance with the terms of this lease. *Third.* All ores and minerals shall be cleaned and prepared for market and no rough or crush rock shall be removed therefrom to be cleaned without the written consent of the party of the first part. *Fourth.* The party of the second part shall keep a correct account of all mineral mined, the amounts and receipts thereof to whom sold and the price received therefor, which accounts shall be open to the inspection of the party of the first part at all times. He shall on the first day of each month render to the party of the first part a correct statement of the kind and weights of all minerals sold during the preceding months, to whom sold and the prices received therefor. *Fifth.* The party of the second part shall pay on or before the fifth day of each month to the party of the first part, at the Exchange Bank in Webb City, Mo., 10 per cent of the price received for all ores sold the preceding month as royalty thereon. *Sixth.* The party of the second part shall have the right to erect all necessary buildings and machinery on said land for the purpose of mining and cleaning ores thereon, and to remove the same at the expiration of this lease except timbering and other improvement necessary to support the ground. *Seventh.* The party of the second part shall provide necessary gates through which to enter upon and from said land and at all times to keep the same closed to prevent stock from trespassing upon said land. *Eighth.* The party of the first part shall have at all times the right to enter all

shafts and drifts to see that the requirements of this lease are complied with. And any time failure to comply with or perform the requirements and conditions of this lease in good faith shall end and determine the same and the party of the first part may enter upon and hold said demised premises. In witness whereof said parties hereto set their hands and seals on the day and year above written. Acknowledged Oct. 17, 1892.''

Plaintiff offered evidence tending to show that defendant had not complied with said lease in that he had not sunk the shaft over ninety feet in the first year and had not mined it continuously as agreed. Defendant testified and admitted he had not dug the shaft as required by the lease the first year and had failed to mine five and six weeks at a time when times were dull. Plaintiff also offered evidence tending to prove that the lease above set out was not in fact delivered to defendant Bremmerman but after its execution was placed in escrow with James Stewart to be delivered to said defendant only on condition that he should sink a shaft two hundred feet deep upon the land during the first year and work it continuously, and if he failed to do so the lease was to be void and of no effect, and that defendant having failed to comply with the terms the lease did not become operative; that a copy only was furnished defendant that he might know what conditions he was to comply with, all of which the court rejected and plaintiff excepted.

At the close of the evidence plaintiff prayed the court to instruct the jury as follows:

''The court declares the law to be that under the deed introduced in evidence by the plaintiff in this case he has shown sufficient to vest the title to the whole land, described in the petition, in him.

''And the court further declares the law to be that under the lease introduced in evidence, the mining

right in the land, that is, the right to mine for lead, zinc and other ore on the land described in plaintiff's petition, was granted for ten years from the date thereof to Frederick Bremmerman, upon condition that he comply with the terms of said lease.

"And if the court, sitting as a jury, finds and believes from the evidence that the defendants were in possession of the premises and land described in plaintiff's petition, using the same for mining purposes under said lease, at the date of the institution of this suit, and that the said defendant Frederick Bremmerman, and those under him, had failed to sink a shaft 200 feet deep within one year from the date of the lease, and otherwise failed to comply with the terms of said lease, by failing to carry on the mining operations as in said lease provided, then the plaintiff is entitled to to the possession of said premises, and the finding should be for the plaintiff."

Which instructions the court refused, to which refusal of the instruction thus prayed the plaintiff by his counsel then and there at the time excepted. The court thereupon found the issue for the defendant, and on the tenth day of March, 1894, and within four days after the rendering of said judgment, the defendant filed his motion for a new trial which being overruled he duly excepted and appealed to this court.

In *Nuttall v. Bracewell*, 2 L. R. Ex. 1, Baron BRAMWELL very felicitously remarked: "As a general rule, when a man has a property, he may grant to others estates in and rights of enjoyment of it, and the grantees may maintain actions against those who disturb them. I do not say there is no exception; there may be, for aught I know. A man entitled to land may grant leases, may grant the exclusive herbage, a right of depasturing, a right of way, a right to game. He may grant the mines underneath, or the right to get

minerals, and other rights in or over the property, or of enjoyment of it." In *Wardell v. Watson*, 93 Mo. 107, this court unanimously held that coal and minerals in place are land, may be conveyed as such, and when thus conveyed constitute a separate and distinct estate or inheritance. In *Coal Company v. Mellon*, 152 Pa. St. 286, the Supreme Court of Pennsylvania stated the now recognized doctrine in these words: "Mining rights are peculiar and exist from necessity, and the necessity must be recognized, and the rights of mine and land-owners adjusted and protected accordingly. . . . Formerly a man who owned the surface owned it to the center of the earth. Now the surface of the land may be separated from the different strata underneath it and there may be as many owners as there are strata." *Lillibridge v. Coal Co.*, 143 Pa. St. 293.

With these underlying principles settled, no doubt can longer exist that it is entirely competent for the owner of the fee to grant a lease of the minerals under the surface of his land. They are the proper subject of grant or conveyance. The controversy in this case arises over the character of the conveyance itself. Plaintiff occupies this position. He maintains that the instrument is a lease but that it became inoperative at the end of twelve months because of the failure of the defendant to comply with the stipulation that the shaft should be sunk two hundred feet the first year; that for condition broken he may re-enter or bring ejectment. Defendant insists that ejectment will not lie because he says the instrument creates merely a license to dig and not an estate; that it creates an incorporeal right. By reference to the instrument itself it will be observed that the grantor denominates it a lease; that he grants therein the land itself and for a determinate period, for a specific rent reserved. That it confers and grants to defendant a power to dig and cart away the miner-

als is true, but it is an exclusive right to mine under said lands for ten years. It is a familiar rule that "a grant of the profits, or income, or rent and issues, or acceptation and profit, or free use, or the right to dispose of, or to give or to sell, or to dispose of at will or pleasure, or to do his will therewith, or to be at his discretion, or to be freely enjoyed, are sufficient to pass the title *out of which such rights are to flow*, or over which such powers are given, where no contrary intention appears in the instrument itself." *Caldwell v. Fulton*, 31 Pa. St. 475; *Morris v. Phaler*, 1 Watts (Penn.), 390; 1 Salkil, 228.

We have seen that mineral ores under the surface may be the subject of separate conveyances. They fall within the definition of land. They are eminently corporeal. Thus in *Caldwell v. Fulton*, 31 Pa. St. 475, the Supreme Court of Pennsylvania said: "An exclusive right to all the coal to be taken, without limitation, except as to the point of ingress and egress, is a sale of the coal itself; and there is nothing incorporeal about coal." . . . "Can it be doubted," said the court in that case, "that these defendants might maintain trespass or ejectment against intruders into their mines?" It has often been ruled in England that trespass and ejectment will lie in respect to open coal mines, for of these there can be possession; but mines not opened, when held by another than the owner of the soil, are sometimes said to be incorporeal, because they lie in grant and are not susceptible of livery of seizin. With us, delivery and registration of the deed stand in lieu of livery, and there is no ground or reason for maintaining an embarrassing distinction in respect to this very important kind of property. "In all these cases where the *right* rather than *the thing*, is described, nobody is at a loss to know what is intended to pass." It is the thing that is bought and sold.

And where that is a coal bed, it is an abuse of language, and an unnecessary application of legal distinctions, to call it an incorporeal hereditament. All of which is singularly appropriate here. The grant to dig and mine the zinc and lead ore on this land for ten years was a lease of the land so denominated and so understood. We have no hesitancy in holding that this instrument was a lease and that in a proper case ejectment will lie for the land and the estate acquired thereby. Ejectment will lie for any corporeal hereditament of which the sheriff can deliver possession. Adams on Ejectment, ch. 2, pp. 18 and 20.

As pointed out by Judge Dillon in *Beatty v. Gregory*, 17 Iowa, 109, the common law books abound with cases which hold that ejectment will lie for mines though another has the surface.

In *Whittingham v. Andrews*, 1 Salk. 255, "It was not questioned that ejectment lies of a coal mine." *Lewis v. Branthwaite*, 2 B. & Adol. 437; Collier on Mines, top page 18. *Karns v. Tanner*, 66 Pa. St. 297. The distinction being observed at common law that ejectment was allowed for *open* mines. No such distinction can be made under our statute, as the minerals are the subject of grant by deed or lease and no livery of seizin is necessary.

The defendant argues that the instrument created a *mere mining license*. We can not agree to such a view. By every test known to the law this instrument is a lease. The technical words of a lease "demise and lease" are present as also the purpose to pass the estate *in praesenti*. Moreover it is not a mere right to dig ores, it is a lease of the *land itself*, with a right to erect all necessary buildings and machinery and the lessees required to provide necessary gates to enter upon, and pass off of said land, and required

to keep them closed. Throughout the instrument the right of possession is presented and the term of years and the fixed rent are inconsistent with a mere license. We strongly opine that if the lessee had complied with the stipulations on his part he would be loath to admit that his right under this paper writing was no more than a license revocable at the pleasure or whim of the grantor. Not only was possession assured by this lease, but actual exclusive possession of the mine and sufficient of the surface was taken and occupied. Possession was essential to the enjoyment of the lessee's rights and had he complied with the lease, ejectment would have been open to him to restore him the possession, if it had been wrongfully taken from him. *Boone v. Stover*, 66 Mo. 430.

Sections 7034 and 7035, Revised Statutes 1889, do not define, limit, or abridge the right of the owner of land to make leases and contracts for mining the ores under it. Those sections simply require the owners of mining lands to adopt and keep printed rules for the regulation of the duties and rights of owner and miners as to such lands, where they permit persons other than their servants, agents or employees to dig or mine thereon.

Having come to the conclusion that the instrument was and is a lease and that defendant was in possession of the mine when the action of ejectment was commenced, the next inquiry is, did the court err in refusing plaintiff's instructions? As already indicated there was ample evidence that defendant and his codefendants who were his employees were in possession of the mine and premises sued for, that defendant had utterly failed to sink the shaft two hundred feet during the first year as required by the lease, and had not continuously worked said mine. The plaintiff prayed the court to instruct that if the court should

find these facts he was entitled to recover. By the terms of the lease it is provided that "any failure to comply with or perform the requirements and conditions of this lease in good faith shall end and terminate the same and the party of the first part may enter upon and hold said premises." In other words, all rights under the lease shall be forfeited. Under the circumstances no doubt can exist of plaintiff's right to maintain ejectment. No demand was necessary. It was the duty of the lessee to observe his covenants. The lessor could either re-enter or bring his ejectment, which is a sufficient declaration of a forfeiture. *Avery v. Railroad*, 113 Mo. 561; *Ellis v. Kyger*, 90 Mo. 606; *O'Brien v. Wagner*, 94 Mo. 93.

The learned circuit court erred in refusing plaintiff's instructions, and as all the facts were admitted no good purpose can be subserved by putting the parties to the expense of another trial save as the inquiry for the damages. The judgment is reversed and the cause remanded for a new trial to ascertain the damages in accordance with the views herein expressed. SHERWOOD and BURGESS, JJ., concur.