STATE OF MISSOURI at the Relation of SUPERIOR MINERAL COMPANY (Employer) and CONSTITUTION INDEMNITY COMPANY (Insurer), Relators, v. J. D. HOSTETTER, WILLIAM DEE BECKER and EDWARD J. McCULLEN, as Judges of the St. Louis Court of Appeals.—85 S. W. (2d) 743.

Division One, July 30, 1935.

*A. A. Alexander* and *L. A. Robertson* for relators.

*Henry C. Stoll* for respondents.

HYDE, C.—This is an original proceeding in certiorari, seeking to quash the opinion of the St. Louis Court of Appeals in the case of Jack Woodruff v. Superior Mineral Company and Constitution Indemnity Company, No. 22918, 70 S. W. (2d) 1104. The case was an appeal from a judgment of the Circuit Court of Washington County, which reversed an award of the Workmen's Compensation Commission to Woodruff, of six dollars per week for life for the loss of his right eye. The commission's finding was that Woodruff was working on the premises of the mining company as an independent contractor, and that, under Section 3308(a), Revised Statutes 1929, the mining company was required to pay him compensation. The Court of Appeals reversed the judgment of the circuit court and remanded the cause with directions to enter judgment affirming the commission's award.

We must take the facts from the opinion of the Court of Appeals. [State ex rel. Sei v. Haid, 332 Mo. 1061, 61 S. W. (2d) 950; State ex rel. Consolidated School Dist. No. 2 v. Haid, 328 Mo. 739, 41 S. W. (2d) 806; State ex rel. Arndt v. Cox, 327 Mo. 790, 38 S. W. (2d) 1079; State ex rel. Union Biscuit Co. v. Becker, 316 Mo. 865, 293 S. W. 783.] They are stated therein, as follows:

"Superior Mineral Company, a corporation, is engaged in the business of mining barytes upon what is known as the DeLore prop-

erty in Washington County, Missouri, the said company operating under a lease subject to royalty made by DeLore to one William C. Wolf, which lease was assigned to said company. . . . In the summer of 1930 Woodruff left the city of St. Louis and moved to Washington County where he joined his cousin, Jim Greenley, who was mining tiff upon the land under lease to the defendant company. Woodruff assisted Greenley in his work, and the tiff which they mined was delivered to the defendant company; the money received therefor being divided between them. In the fall of 1930 Woodruff moved into a small house belonging to the defendant, where he was permitted to live without paying rent, and with the permission and consent of the defendant he entered upon the leased land and dug tiff and other mineral thereon until the day of his injury in January, 1932. The tiff which Woodruff mined was hauled to the mill of the defendant who retained the royalty and deducted the cost of the hauling and paid over the balance remaining to the claimant miner. It is conceded that no orders were given to Woodruff as to where or how or how much tiff he should mine, or when to start or when to quit, and that Woodruff worked as long or as little as he chose, and that he himself furnished the necessary tools and equipment needed for the work. . . . The defendant failed to post a printed statement of the terms, etc., as required by Section 13593, Revised Statutes 1929, and therefore plaintiff's right to mine upon the property leased by defendant became fixed under the terms of Section 13594, Revised Statutes 1929. . . . The work which the claimant was engaged in was that of mining upon the property of the defendant, . . . mining was the usual business carried on by the defendant company, and . . . claimant met with injury in the course of his mining upon the premises of the defendant.''

The Court of Appeals reviewed the provisions of the mining statutes and held that Woodruff's rights under them were, as follows:

''Plaintiff, therefore, had a license to continue with his mining for a period of three years subject to defendant's 'lien on all minerals taken or dug therefrom for the royalty due thereon until the same is paid.' And by Section 13595, Revised Statutes 1929, plaintiff had 'the right to the exclusive possession of such ore or mineral, except the royalty thereon . . . until he . . . shall be paid . . . the then highest market price in cash,' paid by the defendant for like mineral mined upon defendant's premises, and only upon such payment or tender of payment shall the absolute right of possession of such ore or mineral vest in the defendant, and, under Section 13596, Revised Statutes 1929, should the defendant after due notice in writing provided therein, stating that the plaintiff has ore or mineral on hand ready for delivery and requiring defendant to receive and pay for the same, fail to pay plaintiff within five days for such ore or mineral 'then in that event' plaintiff thereupon ac-

quires 'an absolute title to such lead ore or mineral, and may thereupon dispose of the same to any person in any manner he may choose.' "

The conclusion of the Court of Appeals is as follows:

"Our mining statutes therefore furnish the basis of a contract between the defendant mineral company and the claimant herein under which plaintiff, as a licensee, mined tiff upon the defendant's property. The mining of the ore under the facts in the case seems to us to be a service rendered by the miner to the defendant mining company, the mining of the ore being work done according to the miner's own methods and without being subjected to the control of the mining company excepting as to the result of his work. The miner, therefore, was exercising an independent employment under statutory regulations, exercising his skill and judgment as a miner in the prosecution of his work, the execution of which was left entirely to his discretion, without any restriction as to its exercise or limitation, either as to the manner in which or as to the time in which the work had to be done. We find, therefore, abundant substantial testimony to support the findings of fact of the Workmen's Compensation Commission that the claimant rendered his services to the defendant in the course of an independent occupation representing the will of the mining company only as to the result of his work and not as to the manner in which it was accomplished, and that the claimant in the instant case was an independent contractor."

We are concerned upon certiorari only with a conflict. As long as a decision of the Court of Appeals does not conflict with some designated opinion of the Supreme Court on the legal effect of similar facts, does not promulgate a rule of law in conflict with any Supreme Court ruling on the same or similar facts, or does not contravene principles of law stated in the Supreme Court's decisions, it has the inherent right to decide the issues involved, whether its rulings be right or wrong. [State ex rel v. Haid, 332 Mo. 1061, 61 S. W. (2d) 950, and cases cited.] Relators cite cases of the other Courts of Appeals which they claim are in conflict with the decision of the St. Louis Court of Appeals in the present case. We cannot reach a conflict between the several Courts of Appeals by certiorari. [State ex rel. Arndt v. Cox, 327 Mo. 790, 38 S. W. (2d) 1079.] The only way which this court can change the result reached in a case which has been decided in one of the Courts of Appeals, even if it be in conflict with a decision of another Court of Appeals, is for the case to be certified here under the provisions of Section 6 of the Amendment of 1884 to Article 6 of the Constitution. There is no contention here that this court has ever ruled the question of whether or not a miner, working under the conditions stated in the opinion of the Court of Appeals on land owned or leased by a mining company, is an independent contractor so as to be within the protection

of the Workmen's Compensation Act. The conflict claimed is that the ruling that Woodruff was an independent contractor under the facts set out in the opinion contravenes the holding of this court in McGrath v. St. Louis, 215 Mo. 191, l. c. 210, 114 S. W. 611; Flori v. Dolph, 192 S. W. 949, and Coul v. George B. Peck Dry Goods Co., 326 Mo. 870, 32 S. W. (2d) 758, that ''an independent contractor is one who, exercising an independent employment, contracts to do work according to his own methods, without being subject to the control of his employer, except as to the result of his work.''

It is, of course, necessary to go to our mining statutes, as the Court of Appeals did, in order to determine the relationship between the parties because clearly, in the absence of a written contract, they provide the contract and determine the relationship between the parties. Boiling down and putting together the provisions of Sections 13594-13597, Revised Statutes 1929, they provide in substance the following terms and conditions as the contract between the owner (we refer to both owner and lessee as owner) and the miner, permitted to enter and dig for minerals on the land, to-wit:

The miner shall have the exclusive right to mine and dig for mineral on the owner's premises for three years from the date of the consent, given to him to enter and dig, subject to forfeiture if he fails to work for ten days, in any calendar month, except Sundays, without the consent of the owner, except when prevented by unavoidable circumstances or by act of the owner. (Sec. 13594.)

The mineral dug or mined shall be the absolute property of the owner of the land. (Sec. 13597.)

The miner shall deliver, as royalty, at the mouth of the opening or the owner's nearest usual place of business, at least once every month if demanded by the owner, the same proportionate amount of the mineral mined by him as is paid by other miners mining the same kind of mineral on the land or, if none, then the same royalty as paid by miners on the nearest lands, or pay the value of the royalty in cash. (Sec. 13594.)

The owner shall have a lien on all minerals dug for the royalty and failure to pay it shall forfeit the miner's right to work on the land. (Sec. 13594.)

The miner shall have the right to the exclusive possession of the mineral mined by him except the royalty until he be paid or tendered by the owner the then highest price in cash paid by the owner for the same kind of mineral mined on said lands, or if none, then the highest price paid for such mineral dug on the nearest lands; upon such payment or tender the owner shall have the absolute right to possession of such mineral. (See 13595.)

If the miner shall have paid or tendered the royalty or its value in cash, and shall serve a written notice upon the owner stating the amount of mineral he has ready for delivery and requiring the owner

to receive and pay for the same, then the owner shall do so within five days, or the miner shall, upon the owner's failure to accept and pay for the specified amount of mineral delivered or offered to be delivered to him, acquire absolute title to such mineral and may dispose of the same to any person or in any manner he may choose. (Sec. 13596.)

■ "The proper construction of any statute is as much within the province of the Court of Appeals as of this court, and an opinion of the Court of Appeals construing a statute and giving it a certain force and effect cannot be called into question by certiorari unless this court has in some case on similar facts given the same statute a definite construction which the Court of Appeals in the instant case refuses to follow." [State ex rel. Arndt v. Cox, supra.] This court has held one working a mine with the written consent of the owner under Section 13593 obtains no estate, interest or property in the land upon which he is authorized to work or in any of the ore therein before it is mined. [Springfield Foundry & Machine Co. v. Cole, 130 Mo. 1, 31 S. W. 922.] Section 13597 says that ore and mineral after it is mined is the absolute property of the owner, except where there is an express contract otherwise. [4] We fail to see how there is any conflict between this court's definition of an independent contractor and the ruling in the opinion of the Court of Appeals that a miner digging mineral, under the circumstances and arrangements stated therein, on the property of a mining company is as toward it an independent contractor, contracting to dig and deliver its mineral to its mill at the price paid to others therefor. It would seem that Woodruff did exercise an independent employment (independent of control or right to control the time, means, or agencies thereof); that he did contract to do the work according to his own methods (without supervision or direction and with his own equipment); and that he was not subject to the control of the mining company except as to the result of his work (the result contemplated being that he would deliver to the company mill all of the tiff he could dig in three years working at least two-thirds of each month). He was to be paid in accordance with the result of his work, namely, for the amount of tiff which he brought to the mill, at the price paid to others for the same mineral, except that he was required to deliver a certain amount without charge, as royalty, which no doubt in this case the mining company, as lessee, was obligated to deliver to the owner of the leased land. It seems that there is authority in other jurisdictions for holding that somewhat similar arrangements do create the relation of independent contractor between the miner and a mining company. [1 Schneider's Workmen's Compensation Law, 296; Merriweather v. Sayre Mining & Mfg. Co. (Ala.), 49 So. 916; Crowder v. Haymaker (Va.), 178 S. E. 803; see, also, McKinstry v. Guy Coal Co. (Kan.), 225 Pac. 743; Poss Bros. Lbr. Co. v. Haynie (Ga.), 139 S. E. 127; Clifton v. Standard

Lbr. Co. (Ga.), 148 S. E. 312; Cooper v. Dixie Const. Co. (Ga.), 165 S. E. 152.] This court certainly has never held otherwise.

Our Workmen's Compensation Act, Section 3308, subsection (a), provides:

"(a) Any person who has work done under contract on or about his premises *which is an operation of the usual business which he there carries on* shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer *while doing work which is in the usual course of his business.*"

Therefore, a landowner would only be liable for a compensation award, for an injury to one permitted to dig or mine mineral on his land, when the usual business carried on by such owner is mining such mineral. There is no contention that this was not 'true of the mining company which made the arrangement for Woodruff to mine tiff on its land. A mining company can, of course, prescribe its own terms and conditions by complying with Section 13593. This court has also held that these sections do not limit or take away the right of a landowner to lease his land or otherwise contract for the removal of mineral thereform. [Kirk v. Mattier, 140 Mo. 23, 41 S. W. 252.] It is a matter of its own choice whether a mining company deals with miners under the statutory contract or by some other system.

Relators also claim that the opinion of the Court of Appeals, by not holding that the transaction between Woodruff and the mining company was a sale, conflicts with the definition of a sale made by this court in Loud v. St. Louis Union Trust Co., 313 Mo. 552, l. c. 596, 281 S. W. 744, and in other cases which quote Blackstone's definition. In view of the fact that this court has never held that the contract, provided by the above statutes as the basis of the relationship between a miner and a mining company on whose land he works, is· a contract for the sale of ore, we cannot interfere by certiorari with this opinion of the Court of Appeals because it has not so held. It may well be pointed out that it might be difficult to justify such a holding in view of Section 13597, providing that all mineral dug is the absolute property of the owner, and that "any person (obviously intending to include the miner himself), who shall unlawfully sell or convert to his own use, or remove or dispose of, or in any manner make away with or conceal any such ore or mineral" is guilty of larceny.

We find no conflict between the decision of the St. Louis Court of Appeals, in Woodruff v. Superior Mineral Company, and our decisions, and our writ is ordered quashed. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.