STATE OF MISSOURI at the Relation and to the Use of GEORGE HEURING, Relator, v. PERRY T. ALLEN, WALTER E. BAILEY and ROBERT J. SMITH, as Judges of the Springfield Court of Appeals.—112 S. W. (2d) 843.

Division One, January 18, 1938.

*J. Grant Frye* and *B. Hugh Smith* for relator.

*Ward & Reeves* and *Jones, Hocker, Gladney & Jones* for respondents.

*Leahy, Walther, Hecker & Ely* for St. Louis Mutual Life Insurance Company.

*Williams, Nelson & English, Frank W. McAllister* and *Allen May,* amici curiae.

HYDE, C.—This case, recently reassigned to the writer, is a proceeding in certiorari seeking to quash the opinion of the Springfield Court of Appeals in Heuring v. Central States Life Ins. Co., 87 S. W. (2d) 661. Relator, as plaintiff herein, sued for $1000 alleged to be due him as beneficiary in an insurance policy issued by defendant on the life of his minor daughter, who died October 20, 1933. Defendant had judgment in the trial court and, upon plaintiff's appeal, this judgment was affirmed.

Relator contends that the opinion of the Court of Appeals is in conflict with the following decisions of this court, construing the non-forfeiture statutes (Secs. 5741-5744, R. S. 1929) in our Insurance Code, namely: Gooch v. Metropolitan Life Ins. Co., 333 Mo. 191, 61 S. W. (2d) 704; Liebing v. Mutual Life Ins. Co., 269 Mo. 509, 191 S. W. 250; State ex rel. Clark v. Becker, 335 Mo. 785, 73 S. W. (2d) 769; Burridge v. New York Life Ins. Co., 211 Mo. 158, 109 S. W. 560; Cravens v. New York Life Ins. Co., 148 Mo. 583, 50 S. W. 519. The opinion of the Court of Appeals shows that the policy sued on was a twenty-payment life policy issued August 10, 1928, with an annual

premium of $22.43. The trial court found (which is not disputed) that "the premium of $22.43 was paid August 10, 1928, August 10, 1929, and August 10, 1930; that the premium due August 10, 1931, was settled for by the insured, or her father for her, giving a note to defendant for $23.86 (which included interest in advance), which became due August 10, 1932; that on August 10, 1932, this note was not paid, neither was an additional premium (then due) of $22.43 paid. . . . The cash value of the policy on August 10, 1932, was $33, and according to the terms of the note, the defendant was entitled to have the note deducted from the cash surrender value of the policy on that date, which left a balance due of $9.14." The Court of Appeals found that $9.14 would buy extended insurance for 479 days, or until after the date of the insured's death.

The insurance company instead of applying this cash value as a premium for extended insurance applied it as follows:

"The fifth premium due August 10, 1932, was not paid, and as the reserve or cash value of the policy on that date was not sufficient, after deducting the outstanding lien note or indebtedness to pay the full premium, it was applied in accordance with the automatic premium loan clause of the policy to pay a semi-annual premium of $11.66 from August 10, 1932, to February 10, 1933; the semi-annual premium of $11.66, due February 10, 1933, not having been paid, and the reserve or cash value of the policy being insufficient, after deducting the outstanding indebtedness, to pay that premium, the defendant applied the same to the payment of a quarterly premium of $5.94 from February 10, 1933, to May 10, 1933; the insured failed to pay the quarterly premium of $5.94 due May 10, 1933; on that date the excess of the reserve or cash value of the policy over the outstanding indebtedness was $1.00. (The difference between the $9.14 reserve on August 10, 1932, and the total amounts thereafter applied to pay the semi-annual ($11.66) and quarterly ($5.94) premiums under the automatic loan provision as well as the $1.00 then remaining is accounted for by the increase of the reserve due to extending the life of the policy by payment of these premiums through the operation of the automatic loan clause.) As this amount was insufficient to pay the quarterly premium of $5.94 due May 10, 1933, the defendant, under the terms of the policy, was required to apply the same to continue the policy in force as extended insurance; this sum of $1.00, on May 10, 1933, applied to the purchase of extended insurance, continued the policy in force as extended insurance on the policy table, the American Experience Table of Mortality with $3\frac{1}{2}$ per cent interest per anum, for a period of forty-nine days from May 10, 1933, or to June 28, 1933; on the Actuaries or Combined Table of Mortality with 4 per cent interest (the Statutory Table), this sum of $1.00 would continue the policy in force as extended insurance for a period of fifty-four days from May 10, 1933, or to July

3, 1933; the insured died on October 20, 1933, and consequently this period of extended insurance expired prior to her death.''

, Material provisions of the policy applicable in case premiums were not paid when due were as follows:

*Surrender Value*: After three full years' premiums have been paid the insured may at the end of any policy year, or within thirty-one days after the due date of any premium in default, surrender the policy and receive one of the following options:

''(1) Extended Insurance, Automatic: To have the insurance for the face amount hereof continue as non-participating Term Insurance reckoned from the due date of the unpaid premium, or

''(2) Paid-up Life Insurance: To surrender this policy for a paid-up policy, or

''(3) Cash Value: To receive the cash surrender value.

''If the insured shall not within the thirty-one days of grace make written request accompanied by this policy that it be endorsed for paid-up insurance as provided in Option (2) or that it be surrendered for the cash value as provided in Option (3) the insurance will be automatically continued as provided in Option (1). (No request was . made.) . . .

''Special Automatic Loan Privilege. Any premium due thereon after three full years' premiums have been paid and which remains unpaid on the last day of grace will be advanced by the company as a loan against this policy if written request from the insured has been received at the Home Office when application is made for this policy or while this policy is in force without further action by the insured and provided the cash value of the policy at the end of the period which such advanced premium will cover is at least equal to the amount of such premium and interest thereon, together with any outstanding indebtedness hereon to the company. Subsequent premiums will be advanced from time to time as they fall due under like conditions. Any indebtedness thus created will be a first charge against the policy ranking in priority to the claim of any beneficiary or assignee. If the cash value or balance thereof be not sufficient to pay an entire premium and interest it shall be used to pay a semi-annual or quarterly premium if sufficient to do so.'' (The application for the policy sued on made a request for Special Automatic Loan Privilege.) (For other provisions, surrounding circumstances, and pleadings, see Court of Appeals' opinion in 87 S. W. (2d) 661.)

The Court of Appeals stated plaintiff's contention to be ''that since the extended insurance provision of the policy would have extended this insurance, beyond the date of death of the insured, and since the provision of special premium loan privilege is in direct conflict therewith, because under that provision of the policy the policy expired before the date of death of insured, then the court should declare that the extended insurance provision is more favorable to the

insured and should prevail.'' Plaintiff's brief in the Court of Appeals shows that plaintiff also contended there that ''the non-forfeiture statutes guarantee extended insurance to every holder of old line life insurance upon default in payment of premiums, after three annual premiums have been paid (Sec. 5741 and Sec. 5744, R. S. 1929);'' that ''the only way extended insurance can be avoided is to incorporate in the policy one of the unconditional provisions of the non-forfeiture statutes, none of which conditions were incorporated in the policy in question (Sec. 5744, R. S. 1929);'' and that ''extended insurance, absent an unconditional provision as set out in Section 5744, is mandatory and cannot be denied.'' Defendant contended that the automatic premium loan clause was ''not invalid under the Missouri Statutes,'' and did not conflict with the policy provision for extended insurance.

The Court of Appeals ruled:

''But under the express provision of the application for the insurance, made by the beneficiary himself, he did not contract for the provision for extended insurance.  .  .  .

''The courts of this State and others have passed on this very question, and have held that there is nothing to prohibit an applicant to make application for and contract for the kind of insurance he wants.  .  .  .

''The beneficiary, the plaintiff, requested the Special Automatic Loan Privilege.  He had a right to request such a privilege.  The courts hold and we hold, that such a request was within his rights, and the facts that the extended insurance provision was within the policy does not preclude the insured, or the beneficiary as in this case, from making other and different terms of settlement.  .  .  .

''It is our conclusion that the interested parties had a right to make such a contract as they wished, and in this instance the Special Premium Loan Privilege was selected, and we think under our statutes it was a legal contract.''

█ This court has held that the interested parties do not have an unconditional right to make such a contract as they wish, because ''the policy (which they agree upon) and the statute (whether they mention it or not) make up the contract of insurance,'' and because the nonforfeiture statutes ''established a rule of public policy which overrides the freedom of contract of the parties, and makes waiver of statutory provisions ineffectual, although such waiver is contained in the strongest terms in the policy.'' [Gooch v. Metropolitan Life Ins. Co., supra; Cravens v. New York Life Ins. Co., supra.] It is, nevertheless, contended that there can be no conflict of decision here because this court has never passed upon the question of whether or not the special automatic premium loan provision violates our nonforfeiture statutes (Secs. 5741-5744, R. S. 1929) by authorizing a method of disposing of the reserve or cash value not

provided therein upon default in payment of premiums. It is settled that the scope of our review on certiorari is to determine whether there is a conflict of decision, on the rulings made, between the Court of Appeals and the Supreme Court. [State ex rel. Metropolitan Life Ins. Co. v. Allen, 337 Mo. 525, 85 S. W. (2d) 469; State ex rel. Superior Mineral Co. v. Hostetter, 337 Mo. 718, 85 S. W. (2d) 743; State ex rel. Metropolitan Life Ins. Co. v. Daues (Mo.), 297 S. W. 951.] This court has also held that, if there is a question of construction, "the proper construction of any statute is as much within the province of the Court of Appeals as of this court, and an opinion of the Court of Appeals construing a statute and giving it a certain force and effect cannot be called in question by certiorari unless this court has in some case on similar facts given the same statute a definite construction which the Court of Appeals in the instant case refuses to follow." [State ex rel. Arndt v. Cox, 327 Mo. 790, 38 S. W. (2d) 1079; State ex rel. Harrington v. Trimble, 326 Mo. 623, 31 S. W. (2d) 783.]

It is true that no case has been called to our attention, and we know of none, in which this court has ruled upon the question of whether or not this or any similar automatic premium loan provision is prohibited by our nonforfeiture statutes. However, if an opinion of the Court of Appeals either rules differently from this court's ruling as to the legal effect of the same or substantially similar facts, or contravenes a general principle of law stated in this court's divisions then there is a conflict of decision. [State ex rel. Superior Mineral Co. v. Hostetter, 337 Mo. 718, 85 S. W. (2d) 743; State ex rel. Talbott v. Shain, 334 Mo. 617, 66 S. W. (2d) 826; State ex rel. Himmelsbach v. Becker, 337 Mo. 341, 85 S. W. (2d) 420; State ex rel. Silverforb v. Smith (Mo.), 43 S. W. (2d) 1054; State ex rel. Vesper-Buick Automobile Co. v. Daues, 323 Mo. 388, 19 S. W. (2d) 700.] [2] While the former is not true in this case, because this court has not decided the effect of these statutes on an automatic premium loan provision, certainly the ruling of the Court of Appeals does contravene general principles of law stated in the cases relied upon by relator. [Gooch v. Metropolitan Life Ins. Co., supra; Liebing v. Mutual Life Ins. Co., supra; State ex rel. Clark v. Becker, supra; Burridge v. New York Life Ins. Co., supra; Cravens v. New York Life Ins. Co., supra.] These cases hold that the provisions of our nonforfeiture statutes are mandatory; that they are a part of every insurance policy issued in this State whether mentioned therein or not; that they cannot be kept out of any policy, abrogated, waived, or contracted away by any agreement in the policy or made thereafter by the parties prior to default; that, while they do not limit the rights of the insured solely to extended insurance as provided for in Section 5741 because Section 5744 permits a choice between four methods for application of the reserve or cash

value upon default of a premium payment, freedom of contract between the parties is limited to a choice between these authorized options; and that if any advance agreement is made for disposition of the reserve upon default, for which statutory authority cannot be found, it is unenforceable and void. Clearly the ruling of the Court of Appeals that "there is nothing to prohibit an applicant to . . . contract for the kind of insurance he wants," and that "the interested parties had a right to make such a contract as they wished," does contravene these principles of law laid down by this court in its construction of the meaning and effect of these nonforfeiture statutes. It means literally that the interested parties could if they wished contract away or around these statutes so that they would not become a part of the insurance agreement between them. The opinion does conflict with the prior decisions of this court, establishing the right of the State to regulate insurance contracts and to require certain provisions therein, and it must, therefore, be quashed.

Both parties brief the construction of the nonforfeiture statutes, for which they contend, with reference to this automatic loan provision, and seek to have us, in this proceeding, decide whether or not this provision violates these statutes. The construction which the insurance company seeks, and under which it claims the loan provision harmonizes with these statutes, is that made by the Supreme Court of Michigan, in Mutual Benefit Life Ins. Co. v. Commissioner of Insurance, 115 N. W. 707, as to the statutes of that State. The Court of Appeals did not decide this question but instead, based its opinion upon its ruling "that the interested parties had a right to make such a contract as they wished." If the case were here on appeal, we would be authorized to construe the statute and decide its effect upon the automatic premium loan provision, but we have no authority to do so on certiorari. [State ex rel. Metropolitan Life Ins. Co. v. Allen, supra.] Since the Court of Appeals has jurisdiction of this appeal, that question must be decided there. The same thing is true as to the contention made by relator that the automatic premium loan provision conflicts with the extended insurance provision of the policy.

It is ordered that the record and opinion of the Springfield Court of Appeals in the case of Heuring v. Central States Life Insurance Company be quashed. *Ferguson, C.,* absent; *Bradley, C.,* concurs.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.