NELLIE M. BRAMBLE, Administratrix of the Estate of HARLEY L. BRAMBLE, v. KANSAS CITY LIFE INSURANCE COMPANY, a Corporation, Appellant.

NELLIE M. BRAMBLE, Administratrix of the Estate of HARLEY L. BRAMBLE, Appellant, v. KANSAS CITY LIFE INSURANCE COMPANY, a Corporation.—160 S. W. (2d) 746.

Division One, December 12, 1942.

Rehearing Denied February 26, 1942.

Motion to Modify Opinion Overruled, April 16, 1942.

*McAllister, Humphrey & Broaddus* for appellant.

*Harry A. Hall, William R. Ross* and *Cross & Cross* for respondent.

 DALTON, C.—This is an action on an insurance policy to recover $10,000, the face amount of the policy, together with interest, and penalty and attorneys' fees for vexatious refusal to pay. The jury returned a verdict for $7000 on the policy, with $2000 interest and $2500 attorneys' fees. On defendant's motion for a new trial, the trial court required a remittitur of the attorneys' fees, which was made, and judgment was entered for plaintiff for $9000. Plaintiff moved to modify and to enter judgment for $10,000 on the policy, plus the interest, but the motion was overruled. Both parties have appealed. We shall continue to refer to the parties as plaintiff and defendant.

On February 13, 1920, defendant issued the policy sued on, and thereby insured the life of Harley L. Bramble for $10,000. The insurance was made payable to his estate. Certain specific terms of the policy will be stated in the course of the opinion. It is admitted that the policy was in force up to February 13, 1933. Plaintiff contends that the policy lapsed on said date, while defendant contends it did not lapse until February 13, 1935. It is admitted the cash surrender or loan value of the policy on February 13, 1933, was $3326.40 and the total indebtedness $2798.22, leaving "a net equity" of $528.18; and that this sum, applied on said date as a net single premium for extended insurance, would have kept the insurance in force to a date considerably beyond the date of insured's death.

The annual premium of $337.90, due February 13, 1933, was not paid on or before said date, nor within the 31 days of grace thereafter. On March 7, 1933, and within the grace period, the insured wrote defendant as follows (omitting heading and signature): "My premium and loan interest is due and I cannot pay them now. If the loan value of my policy will take care of them for another year please fill out note and send to me to sign." This letter was received by defendant on March 9, 1933, and, thereafter, on March 21, 1933, interest was credited to the insured's account in the sum of $188.17 and on March 22, 1933, the premium on the policy was credited in

the sum of $337.90, both being paid from the proceeds of an additional loan (dated March 22, 1933) in the sum of $526.07, secured by the policy. The actual entry of credit for the premium, on March 22, 1933, was made a few days after the expiration of the grace period. The exact date of the execution of the note by insured, or the receipt thereof by defendant, did not appear.

Prior to the 1934 premium date, to-wit, on February 12, 1934, the insured wrote defendant as follows (heading and signature omitted): "My premium is due on policy No. 205960. Will you please increase my loan on same to take care of it for another year. If the loan value is not enough to take care of it for a year please extend it to amount of same." This letter was received by defendant on February 14, 1934, and the loan against the policy was thereafter increased a total of $567.63 to pay $337.90 premium and $219.73 interest. This loan increased the total indebtedness against the policy to $3881.92, for which sum a note was executed by the insured on February 20, 1934. The note recites that the policy was deposited and assigned as security. The premium due the following year, on February 13, 1935, was not paid on said date or within the grace period thereafter, but on March 21, 1935, and after the expiration of the grace period, upon the insured's application and the execution of an extension agreement an extension was granted for the payment of premium until September 1, 1935, but the premium was not paid. On February 13, 1935, "after the expiration of 15 years," the policy according to its terms had a cash surrender or loan value of $4027.80. The amount of indebtedness then due, as evidenced by insured's note, was $3881.92. On the basis of the net cash value over indebtedness, to-wit, $145.88, the policy was extended as term insurance for 338 days from February 13, 1935, to January 17, 1936. An additional value of $42.52 would have kept the policy in force as extended or term insurance from January 17, 1936 to April 23, 1936, the date of insured's death.

In submitting the cause to the jury the plaintiff requested and the court instructed the jury as follows: ". . . if you find and believe from the evidence that the premium due on said policy on February 13, 1933, was not paid at that time or within the 31 day grace period which expired March 16, 1933, then the policy lapsed and it was the duty of the defendant insurance company to continue the insurance as extended term insurance for such period of time as the reserve on the policy, less the indebtedness against it on February 13, 1933, would purchase, at Harley Bramble's attained age, and in this connection you are further instructed that even though you may find that Harley Bramble entered into a loan agreement and executed loan notes after such lapse, if any, yet under the law any such loan notes and agreements could not be used to shorten the term of extended insurance, or reduce the reserve value of the policy which was then available to purchase extended term insurance."

Defendant assigns error on the giving of this instruction and contends that it is not based upon the evidence and that "it completely ignored the fact that the policy did not lapse and there was no failure to pay the premium due February 13, 1933, for the reason said premium was paid by insured's procuring a loan on his policy, the request for which was made before the 31 day grace period had expired and any delay of insured in returning the executed note was clearly waived by defendant." Defendant further contends that "the trial court erred in not giving defendant's instruction in the nature of a demurrer offered at the close of all the evidence," because, at the time the policy lapsed, its cash value less the indebtedness was sufficient to purchase extended insurance only until January 17, 1936, and, therefore, the insurance was not in force at the date of insured's death on April 23, 1936.

 Plaintiff first contends that "when the premium due February 13, 1933, was not paid when due, the policy lapsed, and became subject to commutation under the nonforfeiture statutes, and the policy reserve available for extended insurance could not be reduced by a subsequent loan." Plaintiff says: "While the defendant might waive the prompt payment of the premium, it could not as a condition of such waiver shorten the term of the extended insurance, by deducting from the reserve or cash value, a so-called loan made after the policy was subject to communtation under the nonforfeiture statute. . . . It would have been perfectly proper for the defendant to have waived the prompt payment of the 1933 premium, if it had stopped there, but it did not do that. It went further and attempted to use up the policy reserve by switching it from reserve to premium and interest payments, in such way as to eat it up about four times as fast. . . . We concede that if the defendant company had received a premium in cash from Harley Bramble after the lapsed date, then it would have waived the forfeiture and the nonforfeiture statute might not apply. . . . Depletion of the policy reserve after lapse for the payment of premiums in advance is not permitted by the statute."

It will be noted that plaintiff's arguments are based upon the theory that there was in fact a default in the payment of premiums; that the policy actually lapsed; and that there was and could be no reinstatement of the policy thereafter by applying reserve to premium and interest.

Defendant's premium record, showing the dates of premium payments on the policy in suit shows that on March 15, 1932, a premium in the amount of $175.70 was paid, paying the premium to February 13, 1933; that on March 22, 1933, $337.90 was paid, paying the premium to February 13, 1934; and that on February 21, 1934, $337.90 was paid paying the premium to February 13, 1935. Plaintiff relies on the fact that the credit for premium for 1933 was not given until more than 31 days after February 13, 1933, but this same record

shows that on three previous occasions the insured had been late in paying his premium on this policy or, in any event, payment of premium was posted after the expiration of the grace period as follows: The quarterly premium due May 13, 1929, was not paid until June 15, 1929; the quarterly premium due August 13, 1930, was not paid until September 16, 1930; and the quarterly premium due August 13, 1931, was not paid until March 15, 1932, this later one being the only one by way of reinstatement, but all showing a course of conduct between insured and defendant. In view of these records, it does not appear why February 13, 1933, should have been selected as the date of lapse.

It is definitely settled "that the provisions of our nonforfeiture statutes are mandatory; that they are a part of every insurance policy issued in this State whether mentioned therein or not; that they cannot be kept out of any policy, abrogated, waived, or contracted away by any agreement in the policy or made thereafter by the parties prior to default; that, while they do not limit the rights of the insured solely to extended insurance as provided for by section 5741 (R. S. 1929) (Mo. St. Ann., sec. 5741, p. 4388) because section 5744 (Mo. St. Ann., sec. 5744, p. 4395) permits a choice between four methods for application of the reserve or cash value upon default of a premium payment, freedom of contract between the parties is limited to a choice between these authorized options; and that, if any *advance agreement* is made for disposition of the reserve upon default, for which statutory authority cannot be found, it is unenforceable and void." (Italics ours.) [State ex rel. Heuring v. Allen, 342 Mo. 81, 112 S. W. (2d) 843, 846; Cleaver v. Central States Life Insurance Company, 346 Mo. 548, 142 S. W. (2d) 474, 478.]

It is equally well settled that the nonforfeiture statutes do not interfere with the freedom of the parties to contract *after* any such default and with reference to the very benefits granted by such statutes. In the case of State ex rel. Adams v. Allen, 343 Mo. 1191, 1200, 125 S. W. (2d) 854, 859, this court said: "It does not violate the nonforfeiture statutes to provide for the holder to have the right to change his mind and take either cash or some other form of insurance *after* the unconditional commutation of a policy for nonforfeitable paid-up insurance has ▇▇▇ occurred. What does violate it is to place any limitation upon its taking effect or to require any action, election or condition precedent of any kind to put such paid-up insurance into effect. It must become effective automatically at the moment of default, but after it has become effective the holder and the company can make any further agreement they desire to make because the statutes are not concerned with what they may do afterwards, but only with what the holder gets automatically upon default."

In the case of Heth v. John Hancock Mutual Life Insurance Company (Mo. App.), 136 S. W. (2d) 392, 395, the St. Louis Court of Appeals in dealing with a situation somewhat similar to the one here said: "A premium was due on this policy on November 24, 1931, and was not paid when due. Under the terms of Section 5741, R. S. 1929, Mo. St. Ann., sec. 5741, p. 4388, it may be said that the policy was then subject to commutation. However, the statute does not say that upon failure to pay premium on the due date that the policy is ipso facto, then and there, commuted, and that no other course is permissible, as appellant would argue; but what the statute does provide is that the policy shall be subject to commutation. We are unwilling to hold that the Legislature either said or meant that because a policyholder did not pay the premium on or before the date it was due, even though the company was willing to and did, receive it when it was paid, that the policyholder must lose the benefit of a continuing policy for the primary insurance, and accept in lieu thereof the statutory commutation. True, the nonforfeiture statutes cannot be contracted away by any agreement in the policy; they become a part of it. But we are unable to find where any court has ever held that the acceptance of an overdue premium by the company and continuing the policy in force as primary insurance would constitute contracting against the provisions of those statutes. To the contrary, it has been uniformly held that prompt payment of dues may be waived expressly or by a course of dealing with the insured." See also the discussion in Fox v. Mutual Benefit Life Insurance Company, 107 Fed. (2d) 715, 719.

We think it wholly immaterial whether it be considered (1) that the policy lapsed when the premium due February 13, 1933, was not paid, and the insured became "entitled" to one of the previously selected choices under the terms of Section 5855, R. S. 1939, Mo. St. Ann., sec. 5744, p. 4395, and the policy "subject to" commutation under Sec. 5852, R. S. 1939, Mo. St. Ann., sec. 5741, p. 4388, or whether it be considered (2) that within the grace period, and under the terms of his policy, the insured demanded a loan upon his policy to pay premium and interest, which loan was in fact made, and the defendant waived the payment of the premium pending the execution and return of the note. In either event, after the lapse, if there was one, insured had the right to deal with defendant as he desired and it appears from the evidence that both the defendant and the insured thereafter evidenced an intention to continue his policy in full force and effect and not merely as extended insurance. The request for the loan was for that purpose. The execution and return of the note was for that purpose. No default was noted. The policy continued in full force and effect. The same procedure was followed one year later, evidenced by insured's request for a loan for the same purpose and the execution and return of the note pledging the policy as security for the

loan. The same intent is further evidenced by insured's application for an extension and the execution of the extension agreement in 1935. All of these acts evidenced an intent and purpose of the insured, carried out with the acquiescence and consent of the defendant, that the policy in all of its terms, including double indemnity provisions, remain in full force and effect.

On September 1, 1935, at the expiration of the extension period, when the premium due February 13, 1935, was not paid, the policy lapsed as of February 13, 1935, the nonforfeiture provision became operative and the insurance effective as term or extended insurance. The policy was not, thereafter, formally or informally reinstated by the parties and the protection extended only so far as the net value of the policy at said date, over and above indebtedness, would carry it. At any time prior to September 1, 1935, defendant could not have avoided the terms and conditions of the policy, as written, and neither may the insured or his beneficiary. It necessarily follows from what has been said that the instruction set out, supra, was erroneous and the only lapse for consideration is the lapse for nonpayment of premium due February 13, 1935.

██ ██ Plaintiff next contends that, if the policy lapsed on February 13, 1935, the net value of said policy, after deduction of all indebtedness, exceeded $145.88 and was sufficient to keep the policy in force as extended insurance until insured's death. This contention is based upon the theory that the policy had a greater reserve value than is admitted by defendant.

The policy on its face and back is designated as a "twenty payment life" policy, and the insured in his application applied for such a policy. Defendant's agent further testified that it was his intent and purpose to sell the insured "the ordinary regular twenty pay life insurance policy with the regular full reserve." The policy, however, actually issued and the one sued on in this case was not such a policy. The policy upon which the suit is based expressly provides: "The first year's insurance under this policy is term insurance." It is further provided: "This policy is issued in consideration of the stipulations, agreements, and representations made in the application for this policy, a copy of which application is hereto attached and made a part hereof, and said policy and application constitute the entire contract between the parties hereto, and in further consideration of the annual premium of Three-Hundred-Thirty-Seven-Dollars and-Ninety-cents for one year's term insurance from date hereof. This policy will be continued upon the further payment of a like amount on or before the Thirteenth day of February each year thereafter until premiums shall have been paid for twenty years, including the first, or until the prior death of the insured."

Under the head of nonforfeiture and loan features the policy provided: "1st. Extended Insurance—Automatic. If any premium on this

policy shall not be paid when due, without action upon the part of the insured the company will extend and continue in force, from such due date, the full amount of this policy as non-participating term insurance for the term of years and months as provided in the accompanying table." The table referred to under the heading of "Table of Loan and Surrender Values" provided: "This table will apply if this policy be free from indebtedness, but any existing indebtedness may be paid in cash and the table will then apply; or if not so paid, the loan and cash values will be reduced by the indebtedness and the amount of paid-up or the term of extended insurance will be reduced in the ratio of the indebtedness to the reserve on this policy. If default occurs after a fractional part of the current year's premium has been paid, the values will be proportionately adjusted.

"After the expiration of . . . fifteen years, cash surrender or loan $4027.80, extended insurance 22 years 6 months, paid up insurance $7420. . . .

"The values in the above table are based upon the American Experience Table of Mortality, with interest at the rate of three and one-half per cent per annum, with no surrender charge. . . . The cash surrender values at all times are at least equal to the reserve value of the extended insurance and of the paid-up insurance."

The table provided no values or paid-up or extended insurance until after the lapse of three years. We have omitted values for other than the fifteenth year. The value set up in the table ($4027.80 after 15 years) was correct, if the policy was valued in accordance with its terms, i. e., as though it were a one year preliminary term policy issued without reserve value on February 13, 1920 and at Bramble's then attained age of 38 years, and a 19 year pay life policy issued one year later on February 13, 1921, at his then attained age of 39. The amount of the indebtedness, $3881.92, deducted from this sum leaves $145.88. If, however, the policy was valued as a twenty year payment life policy with full reserve on the basis of the American Experience Table of Mortality with $3\frac{1}{2}$ per cent at age 38, according to the full net level method of valuation, the reserve at the end of fifteen years would be $410.14 a thousand or $4101.40 on the policy and accordingly would have been $219.40 in excess of the indebtedness on February 13, 1935. This amount would have been sufficient to carry the term insurance beyond insured's death. The evidence shows that the net value of the policy under its terms exceeded the requirements of the nonforfeiture statute, and if its value at the date of default had been computed under the statute, Section 5852, R. S. 1939, (with 25 per cent deduction) its value would not have equaled the indebtedness against it by more than $1000.

It has been noticed, supra, that the provision of the policy under the heading of Loan and Surrender Values includes the words "The amount of paid-up or the term of extended insurance will be reduced

in ▮▮▮ the ratio of the indebtedness to the reserve on this policy," but there is no table in the policy expressly setting out any values referred to as "reserve" values. In view of this circumstance plaintiff contends that "since the parties contracted for a regular twenty pay policy with full reserve, such amount is the amount that the insured is entitled to." Plaintiff insists that "defendant is attempting to make the valuation by means of the cash table set up in the policy," but, plaintiff says "these are cash values and not reserve."

Plaintiff concedes "the company valued the policy as though it were a one year preliminary term policy without any reserve value for the first year," but plaintiff insists that "had the defendant given credit for the full reserve value under the American three and one-half per cent table . . . such reserve . . . would have been sufficient to have continued the policy for its face amount beyond insured's death." The answer to this argument is that this suit by plaintiff, beneficiary, is based upon the policy as issued, while all preliminary negotiations between the insured and defendant merged in the policy issued by defendant and accepted by the insured. This policy the insured retained without objection throughout the fifteen year period. This policy expressly provided that the first year was term insurance and fixed no cash surrender or loan value or paid-up or extended insurance until after the expiration of three years·and all of the values set out in the policy were figured as beginning after the close of the one year period of term insurance. It is this policy that we must construe and we are bound by the terms of the policy. [Tabler v. General American Life Insurance Company, 342 Mo. 726, 117 S. W. (2d) 278, 282; Prange v. International Life Insurance Company, 329 Mo. 651, 46 S. W. (2d) 523, 526; Legrand v. Central States Life Insurance Company (Mo. App.), 132 S. W. (2d) 1105, 1108(5).] The insured was not entitled to a greater value than was provided by the terms of the policy or to a reserve value at the end of the first year of term insurance since the provisions made do not conflict with the statute and are in fact more than it requires.

▮▮ When the policy lapsed, the defendant was required to provide only the net value required by Section 5852, R. S. 1939, Mo. St. Ann., sec. 5741, p. 4388, less any evidence of indebtedness to the company, for application as a net single premium for extended insurance. In this case, since the cash surrender and loan values available to the insured under the terms of the policy were in excess of the minimum requirements of the nonforfeiture statutes, we must look to the terms of the policy itself for the amount available, as "net value" to be applied as a net single premium for extended insurance. [Gooch v. Metropolitan Life Insurance Company, 333 Mo. 191, 61 S. W. (2d) 704, 706; Legrand v. Central State Life Insurance Company (Mo. App.), 132 S. W. (2d) 1105, 1106; Lacy v. American Central Life Insurance Company, 232 Mo. App. 1132, 115 S. W. (2d) 193, 202.]

The provision of the policy for extended insurance expressly provided that such insurance should continue for the term of years and months as provided in the accompanying table, and since the values shown by the table are conceded to be more liberal than the statute, plaintiff may not require more of the defendant. Considering the first year to be term insurance, the table of cash surrender values in the policy was correctly figured on the basis indicated therein, to-wit, American Experience Table of Mortality with 3½ per cent interest per annum with no surrender charge. The cash surrender value of the policy as shown in the table, was therefore its full reserve or net value and in excess of the statutory requirements. [See Magers v. Northwestern Mutual Life Insurance Company, 348 Mo. 96, 152 S. W. (2d) 148.]

Plaintiff further contends that in calculating the reserve or net value of the policy at the time of default the ''plaintiff is entitled to the reserve required by the statutes for registered policies, Sections 6115, 6131, R. S. 1919 (Secs. 5815 and 5831, R. S. 1939, Mo. St. Ann., Sections 5704 and 5720, pages 4357 and 4364) and also to any unused reserve resulting from yearly mortality savings.''

The policy sued on bore an endorsement by the Insurance Department of Missouri as follows: ''This policy is registered and secured by a pledge of bonds or deeds of trust on real estate deposited with this department. Jefferson City, Missouri, March 31, 1920. Alfred F. Hanly, Superintendent.'' Plaintiff contends that these statutes required that registered policies be valued according to the net premium method and that the policy was not entitled to such registration, unless a reserve for the first year in the sum of $188.30 was set up on the books of the company. Plaintiff insists that such reserve would be and is available under this policy for the purchase of extended insurance. Plaintiff concedes that the company did not set up such a reserve on its books, but says defendant's witnesses admitted that at the beginning of each year, including the first, an initial reserve on said policy was set up on the books of the company in the approximate sum of $90 to take care of the policy's share of the mortality expense for that year. Plaintiff further contends that, since the actual mortality costs to the defendant company in the first year and in the succeeding years, on the aggregate of all of its policies for all ages and all of its business, was about one-half of the amount that was expected, the plaintiff.is entitled to apply these mortality savings to the purchase of extended insurance under the policy. Plaintiff argues that such an ''unused balance of reserve set up for the yearly mortality costs'' accrued to the insured's benefit under the policy and was available for the purchase of extended insurance. Plaintiff offered no evidence as to what part of any such savings would be applicable to this policy and, under the evidence, defendant had never made any investigation to determine what was the mortality savings on the said policy. Defendant's witnesses said there was no

such thing as an "unused reserve" and that, although defendant's mortality especially on the aggregate of all of its policies for all ages was about one-half what was to be expected, this mortality savings represented the share of the company's income which was not required either for regular legal reserve or for the payment of death claims, and that it was used to pay taxes, losses from other accounts and to meet expenses and the balance, if any, passed into surplus.

We find nothing in the terms of this policy or in the evidence which would justify a holding that any of the mortality savings, as such, or the so-called "unused reserves" on the books of the company, were available for the purpose of purchasing extended insurance. Since the value of the policy according to its terms, was in excess of those required by Section 5852, supra, plaintiff is bound by the terms of the policy. We think it is clear from reading Sections 6115, 6116, 6117 and 6131, R. S. 1919 (as amended, see Sections 5815 to 5831, R. S. 1939, Mo. St. Ann., pp. 4357-4366, Sections 5704-5720) that said sections were merely intended for the protection of policyholders and any authorization of gross premium valuation was only to secure the solvency of the insurance company. [See Magers v. Northwestern Mutual Life Insurance Company, supra; Rose v. Franklin Life Insurance Company, 153 Mo. App. 90, 104, 132 S. W. 613, 617.]

The statutes referred to have to do with the security back of the registered policies and have nothing to do with the terms of the policy contracts. We find nothing applicable, under the terms of these sections, tending to change any terms or conditions of a policy issued by the company or anything indicating that any reserve required or valuation made or any securities put up by the company would be available to an insured as a net single premium for the purchase of extended insurance under Section 5852, supra.

The only error assigned by plaintiff, as appellant, is that the court erred in not entering judgment for plaintiff for $10,000 on the policy, notwithstanding the jury's verdict of $7000. In view of the conclusions we have reached, supra, it follows that this assignment should be overruled, and that the judgment entered for plaintiff should be reversed. It is so ordered. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.