BESSIE H. ROSE, RESPONDENT, v. NEW YORK LIFE INSURANCE COMPANY, APPELLANT.—168 S. W. (2d) 449.

Kansas City Court of Appeals.   February 1, 1943.

438

*James P. Aylward, George V. Aylward, Ralph M. Russell* and *Francis M. Cook* for respondent.

*Richard S. Righter* and *Rudolph Heitz* for appellant.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau* of counsel.

440

BOYER, C.—The main question for decision on this appeal is whether the beneficiary in a policy issued by the defendant was entitled to recover only what would amount to paid-up insurance, or whether she was entitled to recover the full amount as extended insurance, less indebtedness, under the provisions of the policy and the non-forfeiture insurance statutes of this State.

The action was to recover on a life policy for $2000, plus dividend additions, damages and attorneys' fee for vexatious refusal to pay.

The answer to the petition was a general denial, and a plea that the policy lapsed for failure to pay the semi-annual premium due October 16, 1940; that a loan of $262.80 was outstanding against the policy on that day; that the policy provided that in the event of a default in the payment of premium after three years' premiums had been paid the insured might within three months after such default, but not later, surrender the policy for its cash surrender value; and that upon the insured's death the plaintiff became entitled by the terms of the policy to its value as participating paid-up insurance which amounted to the sum of $128.05; that said sum was tendered to plaintiff who refused it; that the policy provisions for paid-up insurance were valid under Missouri laws; that the policy does not contain any extended term insurance option in the event of default; that when the insured applied for the policy defendant had information that he was suffering from a medical impairment, and in addition was engaged in "bookmaking" a form of gambling, and by reason thereof was not a standard insurance risk; that for this reason the policy was issued to the insured without an extended term insurance option; that if it were the law, or if the said insured had made the claim, that he was entitled to a policy containing a provision for extended term insurance, defendant would have refused to issue the policy. And further, that the insured by accepting the policy and by paying the premiums from October 16, 1935, to and including April 16, 1940, ratified, approved and adopted the policy and all its terms and provisions, and that plaintiff and the insured thereby waived the right to claim that said policy and all its terms are not binding upon them, any statute of the State of Missouri relating to extended insurance notwithstanding.

The reply admitted the issuance of the policy but denied the other allegations of the answer.

The case was tried as a jury waived lawsuit before the Hon. CHARLES L. CARR sitting as Special Judge. The evidence presented consists of a written stipulation of facts, other documentary evidence, and various statements and admissions of counsel for the respective parties at the time of presentation, from which it appears that the policy in question was issued by the defendant to Robert L. Rose on October 16, 1935, and that all of its terms are set forth as shown in Exhibit A, attached to the written stipulation; that the said Rose died on January 2, 1941; that the policy lapsed on October 16, 1940, for failure to pay the

premium then due, and that said premium was never paid; that the then net cash value of the policy was $77.77, which was sufficient to purchase paid-up insurance in the sum of $128.05; that said value was so used by the defendant on January 17, 1941; that if the net cash value had been used to purchase extended insurance in accordance was the provisions of Section 5852, Revised Statutes Missouri 1939, it would have been sufficient to purchase such insurance for a period extending beyond the death of the insured; that if the insured was entitled to have the cash value used to purchase extended insurance the amount of such insurance would have been the sum of $1806. The face amount of the policy was $2000; the policy loan on the date of lapse was $262.80. There were dividend additions which under the terms of the policy were to be added to the face amount and allowed to accrue, so that the sum of $1806 was arrived at by adding dividend additions to the face of the policy and deducting the loan. It was further agreed that if the cash value of the policy were calculated in the manner provided for in Section 5852, Revised Statutes 1939, the amount of such cash value would have been $18.93, the amount available for the purchase of extended insurance; that the defendant tendered to plaintiff $128.05, and kept it good, but said tender was refused. It was further agreed that the form of the policy had been approved by the Insurance Department of the State of Missouri for use in this State, and that a member of defendant's board of underwriters passing on applications for life insurance would testify that the policy was issued without an extended term insurance option because of insured's medical impairment disclosed in his application, and because of the fact that the company had information before it issued the policy that insured was engaged in ''bookmaking'' which is a form of gambling, and that it would have declined to issue life insurance to insured on any other basis and in any other form than Exhibit A.

The policy referred to as Exhibit A in the stipulation was offered in evidence by the plaintiff together with the application for the policy. The application was dated August 17, 1935; it was for a twenty payment life policy in the sum of $2000 with premiums payable semiannually, with waiver of premium and with double indemnity. Applicant's age at nearest birthday was given as 36, and the policy was to bear the date of the application. Under a headline ''Additions or Amendments (For Home Office use only)'' are the following stamped notations: ''Insurance takes effect as of the 16th day of October, 1935, instead of as requested in the application;'' and ''written without temporary insurance, written with age advanced 14 years, and without waiver of premium and (?) double indemnity benefits.'' The last clause of the above quotation is not quite legible. The back of the policy carries the endorsement in words and figures as follows: ''New York Life Insurance Company. Robert L. Rose No. 15335038. Amount $2000. SemiAnnual premium $58.42. Payable on the 16th

day of October and April, Kansas City branch. Limited Payment Life. Without Temporary Insurance. Insurance payable at death. Premiums payable for twenty years unless dividends applied to shorten premium paying period. Annual Participation in Surplus." It also bears the following: "Notice: It is not necessary for the insured or the beneficiary to employ the agency of any person in collecting the insurance under this policy, or in receiving any of its benefits. Time and expense will be saved by writing direct to the Home Office, 51 Madison Avenue, Madison Square, New York, N. Y." At the bottom of the first page of the policy, printed in small type and below the signatures of the president and secretary, are the words: "Insurance payable at death. Premiums payable for 20 years unless dividends applied to shorten premium paying period. Without temporary insurance. Annual Participation in Surplus." Also this notation: "Age 36. Examined. Rated-up age 50."

Plaintiff offered in evidence a letter addressed to Robert L. Rose January 2, 1941, from the Kansas City office. This was the day the insured died. The letter was a reminder that the policy had lapsed for non-payment of premium. The insured was urged to apply for its reinstatement and to make payment of the last premium due with interest from the 16th day of October, 1940. Plaintiff's counsel stated that the letter was introduced "for the purpose of showing that the defendant had not on January 2, 1941, applied the reserve or net value of this policy to paid-up participating insurance." Plaintiff also put in evidence a so-called "brief" in the handwriting of one of defendant's soliciting agents which was given by him to the plaintiff after the death of the insured. Said brief, in substance, shows that the agent thought that at the date of the death of the insured the policy was in force for the face amount of $2000, subject to a loan of $262.80. Among other notations on the so-called "brief" following the printed word "miscellaneous" appears: "Loan 262.80. Divds. 76.48. Lapsed 4/16/40. Reinst. s v c 7/15/40." Under the word "lapsed" were ditto marks, followed by "10/16/40." It was agreed that if the agent were present in court he would testify that when he placed the figures in writing upon the so-called brief, he labored under the mistaken impression that the premiums had been paid up to and including January 2, and that he had no knowledge of the lapse or failure to pay premium on October 16, 1940. The foregoing together with the written stipulation of facts heretofore referred to constituted all the evidence in the case. Defendant offered no evidence.

The provisions of the policy and the applicable sections of the Missouri nonforfeiture statute calling for construction are the following. The policy provides:

"SURRENDER VALUES.—In event of default in payment of premium after three full years' premiums have been paid, the Insured, within three months after such default, but not later, may surrender this Policy and all claims hereunder and receive its Cash

Surrender Value as at date of default less any indebtedness hereon. The Cash Surrender Value at date of default shall be the reserve at such date on the face amount of this Policy, omitting fractions of a dollar per thousand of insurance, and the reserve on any outstanding dividend additions, and any outstanding dividends, including dividend deposits, and less a surrender charge for the third to the nineteenth years, inclusive, of not more than two and one-half per cent of the face of this Policy. The reserve shall be computed on the basis of the American experience table of mortality and interest at three per cent per annum.

"If this Policy shall not have been surrendered for its Cash Surrender Value within three months after such default it will be continued automatically as Participating Paid-up Insurance for the amount which the Cash Surrender Value at date of default less any indebtedness hereon, will purchase as a net single premium, at the attained age of the Insured at the date of default, according to the American experience table of mortality and interest at three per cent per annum. The Insured may obtain a loan on such Paid-up Insurance or surrender it within one month after any anniversary of the Policy for its then Cash Surrender Value."

Section 5852, Revised Statutes Missouri 1939, provides in part:

"No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this state, shall after payment upon it of three or more annual payments, be forfeited or become void by reason of nonpayment of premiums thereon, but it shall be subject to the following rules of commutation, to-wit: The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the actuaries' or combined experience table of mortality with four per cent interest per annum, and after deducting from three-fourths of such net value the unpaid portion of any notes given on account of past premium payments on said policy and any other indebtedness to the company secured by said policy, which notes and indebtedness shall then be canceled, the balance shall be taken as a net single premium for temporary insurance (extended insurance)."

Section 5853, provides the time and the manner in which a policy holder after the payment of three or more full annual premiums may obtain a paid-up policy after the beginning of the extended insurance provided for in the preceding section.

Section 5854 provides:

"If the death of the insured occur within the term of temporary insurance covered by the value of the policy as determined in section 5852, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding."

This section further provides for giving notice and making proof of death, and permissible deductions.

Section 5855 provides:

''The three preceding sections shall not be applicable in the following cases, to-wit: If the policy shall contain a provision for an unconditional surrender value, at least equal to the net single premium, for the temporary insurance provided for hereinbefore, or for the unconditional commutation of the policy for nonforfeitable paid-up insurance, or if the legal holder of the policy shall, within sixty days after default of premium, surrender the policy and accept from the company another form of policy, or if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof, then, and in any of the foregoing cases, this article shall not be applicable: *Provided*, 'that in no instance shall a policy be forfeited for nonpayment of premiums after the payment of three annual payments thereon; but in all instances where three annual premiums shall have been paid on a policy of insurance, the holder of such policy shall be entitled to paid-up or extended insurance, the net value of which shall be equal to that provided for in this article.''

Construing the foregoing provisions of the policy and of the statutes, and upon consideration of all the evidence and the adjudged cases, the trial court ruled ''that this policy was in force and effect at the date of death, and under the terms of the policy and the statute, it provides for extended insurance rather than paid-up insurance.'' As its findings of fact the court accepted the findings of fact made in the stipulation of the parties, and found as admitted in open court that there was due proof of death, and made a general finding for the plaintiff. And the court further found that the refusal to pay was vexatious. The court stated its conclusions of law as follows:

''That the policy was in due force and effect at the date of death of the insured as extended insurance under Section 5852, Revised Statutes of Missouri, 1939, and that Section 5855 is inapplicable to this policy, that is, this policy at the date of death was a policy for extended insurance for the face amount of the policy, but deduction must be made for the amount of the loan on the policy; that, as admitted by the stipulation, the amount due and payable under the policy as extended insurance, and taking into account premiums and deducting the loan, is the sum of $1806.''

The court gave findings of fact requested by defendant to the effect that the court found the facts to be as set forth in the stipulation of facts, and found that the insured was not a normal insurable risk when he applied for insurance; that the defendant knew that he was not and that by reason of said insured's physical impairment and the fact that he was engaged in ''bookmaking,'' a form of gambling, it would have declined to issue a policy on any other basis or in any other form than that in which said policy was in fact issued. The court declined to give a requested finding that in his application for

said insurance insured specifically agreed with defendant that said policy should be written without temporary insurance in the event of the lapse of the policy. The court refused defendant's requested declarations of law which were in effect a request that the court find that plaintiff was entitled to judgment in the sum of $128.05, and further that insured agreed with the defendant when the policy was written that the policy should be written without temporary insurance.

The judgment of the court was for plaintiff and against defendant in the sum of $1806, plus $300 as attorneys' fee and $180.60 as penalty on account of vexatious refusal to pay. The defendant duly appealed.

The errors assigned and the points treated in the brief question the propriety and legality of the findings and conclusions of the court and the court's action in refusing defendant's requested findings and declarations of law. It is first contended by appellant that, "the provision in the policy for paid-up insurance in event of lapse for failure to pay premium was unconditional and nonforfeitable within the meaning of Section 5855, Revised Statutes Missouri, 1939," and appellant cites the following cases: Bothmann v. Metropolitan Life Ins. Co., 299 Mo. 269, 252 S. W. 652; State ex rel. Clark v. Becker, 335 Mo. 785, 73 S. W. (2d) 769; State ex rel. Adams v. Allen, 343 Mo. 1191, 125 S. W. (2d) 854; Columbian Nat. Life Ins. Co. v. Griffith, 73 F. (2d) 244.

All of the above cases were decided and ruled in reference to the meaning and effect of the various sections of the statute heretofore set out, which were the same then as they are now, and considered and determined whether or not the provisions in the insurance policies in question conformed to the requirement of Section 5855 in providing for the unconditional commutation of the policy for nonforfeitable paid-up insurance in such manner as to remove the policy from the effects of the preceding sections.

The Bothmann case and the Adams case ruled that the provisions there in question did not provide for the unconditional commutation of the policy for nonforfeitable paid-up insurance. The Clark case and the Columbian National Life Insurance Company case ruled that the policy provisions were absolute and unconditional. The Bothmann case and the Clark case are both given full consideration in the Adams case, and the provisions in the policy in the Clark case are distinguished from the provisions in the other cases. It is not deemed necessary or appropriate to embellish or to encumber this opinion by setting forth the policy provisions in all of the above cases and the reasons for the different rulings made in the respective cases because the decision in the Adams case is considered to be controlling under the evidence in the pending case. In the Adams case, beginning at the bottom of page 1195 of the State Report, the opinion states:

"The four sections of the statute above quoted must be read and construed together and when so read and construed, we find the law to be as follows:

"After the payment of three or more full years' premiums on a policy, upon default in the payment of any subsequent premium, the policy will not be forfeited but the net reserve or cash value of the policy will be taken as a net single premium to continue the policy for its original amount as temporary or extended insurance, for such time as the net cash value of the policy will carry it, as provided in Section 5741 (5852), unless the policy contains a provision for its unconditional commutation for nonforfeitable paid-up insurance, in which event the policy will not be continued as temporary or extended insurance, but will be commuted for nonforfeitable paid-up insurance in the amount stated in the policy as provided in Section 5744 (5855)."

The policy provision in that case is quoted in part as follows:

"After three full years' premiums have been paid hereon, upon default in the payment of any subsequent premium, if the insured has selected no other option, the company, without any action on the part of the insured, will continue this policy as a paid-up nonparticipating whole life policy for the amount stated in the table on the first page hereof."

"The Cash Surrender clause of the policy provides, in substance, that after three full years' premiums have been paid, if the policy is surrendered to the company within one month after the nonpayment of any subsequent premium when due, the company will pay therefor, within sixty days from the date of such surrender, the cash value thereof."

It was ruled that neither provision was unconditional and that "since the provisions of the policy for paid-up insurance and for cash surrender value are not unconditional as Section 5744 (5855) says they must be in order to prevent the application of Section 5741 (5852), which continued the policy for its original amount as temporary or extended insurance, the company is liable for the original amount of the policy less the indebtedness against it." The distinction between the provisions in the policy in the Adams case and those in the Clark case is set forth in the opinion and in the *Per Curiam* on Motion for Rehearing. Appellant does not approve the distinction made by the court relative to the provisions in the different cases and characterizes such distinction as "unnatural, artificial and dependent upon rhetoric." Freedom of criticism may be indulged, but rulings of the Supreme Court must be accorded controlling authority in courts of appeals. Appellant further claims that the decisions are not in harmony, and that the provisions of the policy in this case, while not identical, are more nearly like those in the Clark case, and that the ruling in the Clark case should be followed here; but appellant does not indicate how this court could properly fail to follow the most recent ruling of the Supreme Court upon practically similar issues and facts.

The pertinent provisions of the policy in this case have been set out. The first portion of the provision under Surrender Values provides:

"In event of default in payment of premium after three full years' premiums have been paid, the Insured, within three months after said default, but not later, may surrender this Policy and all claims hereunder and receive its Cash Surrender Value as at date of default less any indebtedness hereon."

And the beginning of the second paragraph states:

"If this Policy shall not have been surrendered for its Cash Surrender Value within three months after such default it will be continued automatically as Participating Paid-up Insurance for the amount which the Cash Surrender Value at date of default less any indebtedness hereon, will purchase as a net single premium, etc."

It is clear enough that this last provision is conditioned upon the fact that the insured shall not have surrendered the policy for its Cash Surrender Value within three months after default, and does not provide "for the unconditional commutation of the policy for nonforfeitable paid-up insurance," as Section 5855 requires in order to prevent the application of Section 5852 providing for temporary or extended insurance. Appellant's first contention is not sustained. Such ruling is required in view of the reasoning of the opinions and the decisions in both the Adams and Bothmann cases.

The next contention is that the nonforfeiture statutes apply only to a standard insurable risk, and that plaintiff is entitled only to paid-up insurance under the terms of the policy. Counsel state that they have found no authority directly in point and that the question never has been passed on in Missouri. The argument is to the effect that the statute was not intended to prevent persons who are sub-standard risks, like the insured, from making special contracts with insurers, and that the insured did make such a special contract. It is claimed that the policy would not have been written to include extended term insurance on account of insured's physical disability and his occupation. There is no merit in the suggestion that the statutes do not apply to a policy issued to an insured who is not a standard insurable risk. There is no express or implied exception in the statutes of any kind of a risk or policy to which they refer. They apply to all life policies, in express terms, and there is no room for construction. The defendant took account of the insured's physical disability and "rated up" the age of insured to that of fifty years instead of his actual age of thirty-six, and fixed the premium accordingly when it wrote its policy.

The statement that the insured made a special contract with the defendant is connected with the next insistence of appellant, which is that, even if the policy provision of paid-up insurance is not unconditional and the nonforfeiture statute applies, plaintiff would still be entitled only to paid-up insurance. It is asserted that "the insured and the defendant agreed at the time the policy was issued that there should be no extended insurance." The trial court was justified in its finding and conclusion that the insured did not make any such agree-

ment. Appellant relies upon certain stamped endorsements on the face of the application heretofore set out. There is no evidence that any such endorsements were on the application at the time the insured signed it, and the only reasonable inference is that they were stamped on the blank space in the application under the headline, "Additions or Amendments (For Home Office use only)" after the application was received at the Home Office. The office authorities decided to write a policy to be effective October 16, 1935, instead of the date requested in the application, and then used their other rubber stamp, imprinting the words "without temporary insurance. Written with age advanced 14 years." The endorsements on the back of the policy and at the bottom of the first page of the policy form no part of the contract. While all these endorsements may have some significance in the mind of the insurer, they are wholly insignificant in the eye of the law. The insured made no special contract with the insurer for paid-up insurance only, such as was executed in the case of Nielsen v. American Union Life Ins. Co., 155 S. W. (2d) 515, cited and relied upon by appellant. The insured in that case gave this express direction in his application: "In the event of default in payment of any premium on any policy issued hereunder after payments for three years shall have been fully paid, I hereby direct that the company shall continue such policy as non-participating paid-up insurance of such reduced amount as the then value of such policy, less any indebtedness, will purchase." The difference in the situation in that case and in the case under review is obvious and needs no further demonstration. Other authorities cited by appellant have been considered and found to be inapplicable.

It must not be overlooked that the statutes were part of the contract in this case. Their provisions are mandatory. They are a part of every such policy issued in this State whether mentioned therein or not. They cannot be kept out of any policy, abrogated, waived or contracted away by any agreement in the policy or made thereafter by the parties prior to default, and while they do not limit the rights of the insured solely to extended insurance as provided for in Section 5852, because Section 5855 permits a choice between methods of application of the reserve or cash value upon default of a premium payment, freedom of contract between the parties is limited to a choice between these authorized options. If any advance agreement is made for disposition of the reserve upon default, for which statutory authority cannot be found, it is unenforceable and void. The foregoing is in effect a quotation which has been used in many cases, as set forth in Bramble v. Kansas City Life Ins. Co., 349 Mo. 318, 160 S. W. (2d) 746, 749.

It is finally urged that the court erred in its finding that the refusal of the defendant to pay was vexatious and in allowing damages and attorneys' fee; because plaintiff recovered less than she sued for; that defendant had a meritorious defense which was sustained by the

court; and that there was no evidence that plaintiff made demand for payment, nor evidence of a refusal to pay. The claim that plaintiff recovered less than she sued for is based upon the demand in the pteition for $2076.48, the answer alleging a loan against the policy in the sum of $262.80, and the general denial contained in the reply. According to the pleadings there was an issue as to the amount which would be due plaintiff even though she was entitled to recover extended insurance, but this issue passed out of the case and was settled by a stipulation to the effect that if plaintiff was entitled only to paid-up insurance the amount would be $128.05, and if she was entitled to extended insurance the amount of recovery would be $1806. This stipulation necessarily took account of the outstanding loan against the policy. By reference to the record it is found that this stipulation was filed in the case October 31, 1941. The case was heard on December 24, 1941. Whether there was evidence of vexatious refusal to pay must be determined by the facts as they would reasonably appear before the trial. This is announced as the rule in State ex rel. Continental Life Ins. Co. v. Allen, 303 Mo. 608, 262 S. W. 43, cited by appellant. Under the facts as they appeared at the time of trial there was no issue to be determined by the court, and none was determined by the court, in reference to an outstanding loan against the policy. The only issue was whether plaintiff was entitled to paid-up insurance or extended insurance. The court found for the plaintiff on that issue, and further found that there was no open question of law in reference to the contention of defendant that plaintiff was only entitled to paid-up insurance under the terms of the policy and the provisions of the statute. Under this situation the court found that the refusal to pay was vexatious. Plaintiff was not required to prove vexation by direct and specific evidence, but such finding may be made upon a general survey and a consideration of all the evidence, facts and circumstances surrounding the case. Under such facts and circumstances as detailed in this case, it appears that it would be in the discretion of the court, as it would have been in that of a jury, to determine the issue and either deny or award damages and attorneys' fee. [Albert v. Metropolitan Life Ins. Co., 95 S. W. (2d) 343, 345, and cases cited.]

Appellant, in the reply brief, withdraws the contention that there was no demand upon defendant for payment, but asserts that the demand was for the full amount sued for and would therefore justify refusal at that time. As shown above, the issue of vexatious refusal to pay must be determined upon the facts and circumstances as they would reasonably appear before the trial. The award of damages and attorneys' fee has some substantial support upon the whole record and, like the verdict of a jury, it must be sustained.

All points presented in the brief of appellant have received attention and no reversible error has been shown.

In addition to an affirmance of the judgment, respondent insists that the appeal is vexatious, and calls for an exercise of the discretion

451

of this court to ward damages to the appellee as permitted by Section 1230, Revised Statutes Missouri, 1939. The situation is not at all similar to that in the case of Boillot. v. Income Guaranty Co., 124 S. W. (2d) 608, cited by respondent; nor is there sufficient reason, in the exercise of a sound discretion, to allow damages on account of vexatious appeal in this case.

The judgment of the court below should be affirmed, and the Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.